DETROIT LUBRICATOR CO. *v.* LAVIGNE.

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—CONSTRUC-
   TION—PERFECTION OF INVENTIONS.

   A contract of employment, under which the employé agrees to
   devote his entire time and best energies as a master mechanic
   for the welfare of the employer's business, and that any in-
   ventions which may result from such employment in the na-
   ture of tools, machinery, and devices to be used in connection
   with the employer's business shall be protected by patents
   and become its sole property, covers devices of the kind stip-
   ulated, invented by the employé during the term of employ-
   ment and perfected at a place other than the employer's
   shops without its knowledge.

2. SPECIFIC PERFORMANCE—CONTRACT OF EMPLOYMENT—ENFORCE-
   ABILITY.

   A contract of employment under which the employé agrees
   that any inventions which may result from the employment
   shall be protected by patents and become the sole property of
   the employer, is not without consideration, does not lack
   mutuality, is not unconscionable nor against public policy,
   and is specifically enforceable as against a corporation with
   notice to which the employé has assigned inventions covered
   by the contract of employment.

Appeal from Wayne; Donovan, J.   Submitted October
16, 1907.   (Docket No. 26.)   Decided March 31, 1908.

Bill by the Detroit Lubricator Company against Joseph
P. Lavigne and the Lavigne Manufacturing Company to
set aside certain assignments of patents, for an account-
ing, and for general relief.   From an order sustaining
the demurrer of defendant Lavigne Manufacturing Com-
pany, complainant appeals.   Reversed and remanded.

*Shaw, Warren, Cady & Oakes* (*James Whittemore*,
of counsel), for complainant.

*Parker & Burton* (*Bowen, Douglas, Whiting &
Murfin*, of counsel), for defendant company.

McALVAY, J.   This is an appeal from an order sustaining a demurrer of the defendant, the Lavigne Manufacturing Co., appellee, to the bill of complaint.   Defendant Joseph P. Lavigne answered.

Complainant avers in its bill of complaint that it has been extensively engaged for more than 20 years in the manufacture and sale of lubricating devices for all kinds of machinery; that in 1902 it largely increased its said business in manufacturing and selling lubricators, force feed oil pumps, mixing valves, carburetors, and other devices used in the construction of automobiles and other forms of engines; that it recognized the large and increasing field for improvements in the foregoing articles named, and other devices used in the construction and operation of automobiles and automobile engines, and desired to engage as a superintendent and master mechanic one who was experienced in the manufacture of automobile and other engines and who also had mechanical and inventive ability to plan, devise, and design improvements upon the then existing devices and to perfect the same; that in the summer of 1902 complainant through its officers had conferences with defendant Joseph P. Lavigne, explaining to him the matters and conditions above stated and the purpose of complainant of entering into the manufacture of the appliances above named, and for the purposes named to engage a superintendent and master mechanic with the qualifications above set forth; that said defendant represented that he had considerable experience in the manufacture of automobile engines and their appurtenances and that he believed great improvements could be made in the devices then in use; that it was explained to said defendant by complainant's officers at such conferences that such master mechanic must devote his entire time and best energies to the welfare of complainant's business, and that his efforts should be particularly directed towards inventing and perfecting improved devices for use on automobile and other engines and that complainant must be protected against any patents which

might be issued upon any and all inventions by their superintendent and master mechanic as a result of such employment, and therefore as a condition precedent to such hiring that any and all such inventions should, at complainant's request and expense, be protected by patents, which, when issued, to become the sole property of complainant; that said defendant agreed to all such conditions of employment and entered upon such work under a contract with complainant made July 11, 1902, as follows:

"DETROIT LUBRICATOR CO.,
        "Detroit, Mich.

"*Gentlemen:* I hereby accept your offer of a position as master mechanic of your company for a period of one year at a salary of twenty-five hundred dollars ($2,500) per year, it being understood that I shall devote my entire time and best energies towards the faithful performance of my duties as a master mechanic and for the welfare of your company.   I also agree that any inventions which may result from such employment in the nature of machinery, tools or devices, to be used in connection with your business, shall, at your request and expense, be protected by patents, such patents to become the sole property of the Detroit Lubricator Company.   I further agree to report for duty at your factory not later than Monday, July 28th, 1902, my service with your company beginning at that time.

                "Very Truly Yours,
                (Sgd.)    "J. P. LAVIGNE.
"Detroit Lubricator Co.,
        "Per (Sgd.) F. W. HODGES, Secretary-Treas."

This contract was in all material matters re-executed from year to year and such employment continued until about January 1, 1906.   The salary was increased to $3,000 at the beginning of the second year.   The last contract made July 25, 1905, contained the following additional clause:

"This contract of employment may be terminated by either party on sixty days' notice in writing."

The bill further avers that after this employment began

the officers of complainant company consulted with this defendant frequently as to possible inventions of devices herein mentioned, and that thereafter he spent a large part of his time in endeavoring to invent improvements upon existing devices, and for such experiments he was furnished by complainant with all necessary machinery, tools, and labor; that among the devices he thus worked upon in complainant's shops were an improved force feed pump, a hot water valve, a mixing valve, and a carburetor; that while this defendant was in said employment, experimenting upon devices above referred to, he was secretly, and without complainant's knowledge, working upon the same character of devices at his own home, and used his authority as superintendent of complainant's shops to fraudulently entice certain of its employés to leave its employment to aid him in such work; that as the result of the employment of said defendant by complainant, and during the same, he invented various devices, tools, and machinery of the character used in connection with complainant's business, among which inventions were a force feed oil pump, a hot water valve, a mixing valve, and a carburetor; that after inventing said devices while in the employment of complainant and as a result of such employment, with intent to defraud complainant of its rights in such inventions and any patents which might issue thereon, said defendant on October 1, 1905, gave notice that he would terminate his employment. The bill further charges that this defendant, after he left complainant's employment in furtherance of this scheme to defraud complainant of its rights in such inventions and patents, conspired with Rose Lavigne, a member of his family, and Charles F. Burton, his attorney, and caused to be organized the Lavigne Manufacturing Company, the other defendant to this suit, for the purpose of making it the ostensible owner and holder of said inventions and patents which might issue thereon; that the defendant Lavigne was the organizer of the company, its largest stockholder and is now its president, and

in practical control of its affairs; that the three parties men-tioned are the only subscribers of its 3,000 shares of stock, of which Lavigne subscribed 2,000 shares, Rose Lavigne 200 shares, and Burton 800 shares; that in payment for his stock defendant Lavigne assigned certain applications for patents upon a force feed pump, a hot water valve, a mixing valve, and a carburetor which complainant claims in right belong to it and which assignments and transfers were fraudulently made for the purpose of defrauding it of its right in and to said inventions named. It is also charged that Lavigne understood this contract and recognized his obligations under it, and actually assigned the entire right and title in certain inventions shortly before leaving said employment.

Upon this appeal it is unnecessary to state the relief prayed for against defendant Lavigne. The relief prayed against the demurring defendant, the Lavigne Manufacturing Co., is that any and all assignments of inventions and applications for patents upon inventions recited in the bill of complaint specifically naming them, be declared null and void, for an accounting for sales of said force feed oil pumps manufactured by it, for an injunction restraining it during the pendency of this suit from selling or transferring any of said inventions and to desist from manufacturing the same, and for a decree declaring these inventions to belong to complainant and requiring the defendant company to assign and transfer all its right and interest in said inventions to complainant, and for general relief.

Of the seven grounds of demurrer alleged, it will be necessary to discuss but two:

(1) Whether the contract between the parties covers the inventions and devices described.
(2) Whether equity will enforce the contract specifically against the demurring defendant.

1. Upon the first proposition, the clause of the contract to be considered is:

" I also agree that any inventions or devices which may result from such employment in the nature of machinery, tools or devices to be used in connection with your business shall .at your request and expense be protected by patents, such patents to be assigned to and become the sole property of the Detroit Lubricator Company."

The bill of complaint, which is taken as true for the purposes of this demurrer, shows clearly that complainant was engaged extensively in the manufacture and sale of lubricating devices of all kinds, and had a large and increasing trade in lubricators, force feed oil pumps, mixing valves, carburetors and other devices used in the construction and operation of automobiles and automobile and other forms of engines, and, being so engaged, employed defendant Lavigne for a specific purpose, entering into the agreement of which the above is a part.   Defendant company asks for a construction of this agreement that will include only such machinery, tools, or devices which could be used in complainant's shops in the manufacture of such articles as it desired to put upon the market, giving this construction to the clause " machinery, tools and devices to be used in connection with your business."   Complainant's business was the manufacture and sale of these devices and the improvements contemplated were in these articles in which they were dealing.   Lavigne was to devote his entire time and best energies as a master mechanic for the welfare of the business, and agreed that any inventions which might result from such employment, in the nature of tools, machinery, or devices to be used in connection with complainant's business, should be protected by patents and become its sole property.   Our construction is that the contract covered these inventions and devices described in the bill of complaint and all other of like kind.

2. The doctrine of specific enforcement of contracts is too well established and too frequently recognized by this court to require any exposition.   The question is whether this is specifically enforceable, and if so whether enforceable against the demurring defendant.   A large part of

appellee's brief is devoted to this proposition, and many cases are cited as in point. The conclusion arrived at is a negative answer to both branches of the question.

1. Because the contract is uncertain, indefinite and ambiguous.

2. Because it is grossly inequitable.

3. Because it lacks mutuality.

4. Because as to part of it at least there is no way in which the court could enforce its decree.

5. Because the relief prayed is with respect to articles not falling within the business conducted by complainant when the contract of hiring was renewed.

An examination of the contract and bill of complaint constrains the court to arrive at an exactly opposite conclusion; and we determine that this contract is specifically enforceable against defendant Lavigne; and therefore upon the face of the bill which specifically charges the fraudulent scheme of Lavigne in the organization of the company for the purpose of defrauding complainant, which scheme is charged to have been fraudulently executed, this contract is also specifically enforceable against the demurring defendant. In the Federal courts it has been held repeatedly that such contracts are not without consideration; nor do they lack mutuality. These courts have said that these contracts are not unconscionable, nor against public policy, and that they are specifically enforceable. *Hulse* v. *Bonsack Machinery Co.*, 65 Fed. 864, 13 C. C. A. 180; *Thibodeau* v. *Hildreth*, 60 C. C. A. 78; *Mississippi Glass Co.* v. *Franzen*, 143 Fed. 501.

The order and decree of the circuit court in sustaining the demurrer is reversed, with costs of both courts to complainant, and said defendant is given the time provided by rule to answer the bill of complaint if such course is desired.

Ostrander, Hooker, Moore, and Carpenter, JJ., concurred.