### FRANK M. HOYT *v.* GEORGE J. CORPORON.

Essex. March 7, 1929. — October 2, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Agency,* Agent's duty to principal: inventions, patents. *Equity Jurisdiction,* To enforce principal's right to invention by agent, Laches.

In a suit in equity to require a former employee of the plaintiff to assign to him two patents issued to the defendant while in the plaintiff's employ, the following facts were found by a master: The plaintiff had been unsuccessful in constructing a machine which would satisfactorily blanch peanuts and remove their "red jackets," a process in the plaintiff's business of blanching peanuts, salting them and making peanut butter; and, in interviews with the defendant, who then was in the employ of another, explained that the blanching problem was one he wished the defendant to solve, stating that he had a position for the defendant "on the distinct understanding that he could help in the production end and in the development of his machinery." The defendant replied that "he could be of great help to him and that he could make many little things which would help in the production of plaintiff's product," and entered the plaintiff's employ in June, 1920, at $75 per week to exercise supervision over the mechanical operation of the entire plant, "including the improvement of existing, and the development of new or additional machinery, and the general improvement of production and efficiency." The employment continued for five years, during which, through work done

"almost entirely during working hours on plaintiff's time," he perfected two satisfactory machines. The plaintiff objected to any patent being applied for, fearing disclosure of the secret process; but, upon assurance that taking the patents in the defendant's name would avoid that result and would free the plaintiff from competition, he consented and paid the expenses of the patent proceedings. Patents were issued to the defendant in 1921 and 1922. Upon the defendant's being discharged by the plaintiff in January, 1925, he claimed the title to the patents, and this suit was begun in November, 1926. *Held,* that

(1) While the mere fact that one is employed by another does not prevent him from making improvements on the appliances and machinery used in the business and obtaining patents therefor as his own property, if one is employed for the purpose of developing or improving the machinery or processes of another, the improvements resulting from this work belong to the employer;

(2) Upon the facts above stated, the results of the defendant's efforts in perfecting and inventing the machines belonged to the plaintiff, and the patents were the property of the plaintiff;

(3) Even in the absence of an express agreement to assign the patents to the plaintiff, the patents were the property of the plaintiff by reason of the nature of the employment and the end sought for in employing the defendant.

In the suit above described, the defendant set up laches in his answer. The master found, in addition to the facts recited above, that the defendant had no intention of assigning the patents to the plaintiff, but kept conversations between them "sufficiently general so that plaintiff was allowed to believe he was to have the patent, without any definite promise or assurance to that effect being given by defendant," and that the plaintiff's delay was due to the fact that the relations between them were friendly, and the "defendant was still apparently in plaintiff's confidence." The "plaintiff apparently expected that defendant . . . would eventually abide by his wishes and direction, and he evidently assumed that defendant's hesitancy about assigning the patent was only temporary and he would yield to plaintiff's insistence whenever he should definitely order it done." Although in cross-examination the plaintiff admitted that he knew in 1921 "the defendant was claiming the patent on the blancher to be his own," it was *held,* that the plaintiff was not guilty of laches and did not by his delay deprive himself of the right to the patents.

BILL IN EQUITY, filed in the Superior Court on November 29, 1926, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion.

An interlocutory decree confirming the master's report was entered by order of *Keating*, J., who also ordered the entering of a final decree dismissing the bill and reported

the suit for determination by this court on the following terms: "If the trial judge was warranted in ordering that such a decree be entered, a final decree dismissing the bill is to be entered; otherwise, a final decree is to be entered in accordance with the first and second prayers of the bill."

*F. J. V. Dakin*, for the plaintiff.

*E. Foss*, for the defendant.

CARROLL, J. In this suit in equity the plaintiff asked that the defendant, a former employee of the plaintiff, be restrained from assigning any right or title in and to two patents, one dated June 7, 1921, for blanching peanuts, and the other, dated October 28, 1924, for "Dispensing Apparatus," and that the defendant be ordered to assign to the plaintiff "all the right, title and interest in and to said two United States Letters Patent." In the Superior Court an interlocutory decree confirming the master's report was entered, and a final decree was ordered dismissing the bill. The case was then reported to this court.

The plaintiff for several years conducted the business of blanching peanuts, salting them, and making peanut butter. He found it difficult to blanch the peanuts, this being a process of removing the "red jackets." The peanuts as they came to the plaintiff were shelled, but the red jackets were on them. Several machines had been constructed to do the work of blanching, but they failed to accomplish it in a satisfactory manner. The plaintiff discussed this problem with the defendant on various occasions before the defendant was employed by the plaintiff. While the defendant was in the employ of another concern the plaintiff saw him at his then place of business. On one of these visits the defendant pointed out to the plaintiff the improvements the defendant had made in machinery and production methods. Before the defendant entered the plaintiff's employment he called on the plaintiff. On this occasion the plaintiff showed the defendant the blanching machines and informed him of "the trouble he was having," and explained to the defendant that the blanching problem was one he wished him to solve. The master found that at this interview the plaintiff said

he had a position for the defendant "on the distinct understanding that he could help in the production end and in the development of his machinery"; that the defendant told the plaintiff "he could be of great help to him and that he could make many little things which would help in the production of plaintiff's product." In June, 1920, the defendant began work for the plaintiff; he was paid $75 a week.

The master also found that the plaintiff hired the defendant because of his mechanical training and knowledge; that he was employed to exercise supervision over the mechanical operation of the entire plant, "including the improvement of existing, and the development of new or additional machinery, and the general improvement of production and efficiency"; that the defendant was the factory superintendent during the five years of his employment by the plaintiff; that "as far as the employees were concerned" the defendant's duties "were to be those substantially of a superintendent, but that as between himself and the plaintiff, they were to be as above described with reference to the improvement and development of machinery and production methods."

The defendant perfected a machine which was satisfactory. This work was done by the defendant "almost entirely during working hours on plaintiff's time." The defendant then suggested to the plaintiff that the machine be patented. The plaintiff objected to this because he was afraid that an application to the patent office would disclose "the secret of the machine and make it available for his competitors to use it." The defendant assured the plaintiff he would be free from competition if the machine was patented, and "persuaded plaintiff that if it were applied for in his own (defendant's) name, no one would suspect plaintiff of being interested." The "plaintiff consented to the application being made because of this assurance of complete and adequate protection, and that, without such assurance, he would have insisted on keeping the machine away from public view and in using it as a secret of his business without being submitted to the patent office." The plaintiff finally assented, the patent was applied for, and the plaintiff paid

the expenses of the application. It was found that the plaintiff understood and expected that the patent was to be applied for in the defendant's name "because of the technical requirements suggested by the patent attorney and that plaintiff supposed that the invention and patent were his and were to be his."

Subsequently, at the request of the plaintiff, the defendant designed a vending apparatus for peanuts. This machine was for the purpose of allowing the delivery by retailers of peanuts without being touched by hand. The expenses of the application for this patent were paid by the plaintiff. This invention the plaintiff "supposed and expected" would be his, and the "defendant intended it as his own." The defendant was discharged from the plaintiff's employment in January, 1925.

The mere fact that one is employed by another does not prevent him from making improvements on the appliances and machinery used in the business and obtaining patents therefor as his own property. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182. *American Stay Co.* v. *Delaney*, 211 Mass. 229. *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158. On the other hand, if one is employed for the purpose of developing or improving the machinery or processes of another, the improvements resulting from this work belong to the employer; as stated in *Solomons* v. *United States*, 137 U. S. 342, at page 346, "If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer." *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd. supra. Standard Parts Co.* v. *Peck*, 264 U. S. 52.

The plaintiff was not satisfied with the machines he was using; he desired to perfect them, to improve his processes for blanching and to bring about a general improvement in production and efficiency. It was for this purpose the defendant was employed. The results of his efforts in

perfecting the blanching machine and in inventing the vending machine belong to the plaintiff, and the patents for these machines are the property of the plaintiff. The fact that the defendant acted as superintendent and was so employed does not deprive the plaintiff of the title to the inventions. The defendant's employment was not a general one; his duties were to perfect the machinery of his employer and improve the existing processes. It was fully understood that this was the reason why he was employed. Even in the absence of an express agreement to assign the patents to the plaintiff, by reason of the nature of the employment and the end sought for in employing the defendant, the patents were the property of the plaintiff.

The defendant contends the plaintiff was guilty of laches. The patent for the blanching machine was issued June 7, 1921; the application for the vending apparatus was filed February 2, 1922; the defendant was discharged January 15, 1925; and the plaintiff's bill was filed November 29, 1926. It was found that the defendant assured the plaintiff he would be free from competition if the patent was taken in the defendant's name, and the plaintiff consented to this arrangement because of the defendant's promise. Although the defendant had no intention of assigning the patent to the plaintiff, the master found "The conversations were kept by the defendant sufficiently general so that plaintiff was allowed to believe he was to have the patent, without any definite promise or assurance to that effect being given by defendant." The explanation of the plaintiff's delay was the fact that the relations between the plaintiff and the defendant were friendly, and the "defendant was still apparently in plaintiff's confidence." The "plaintiff apparently expected that defendant . . . would eventually abide by his wishes and direction, and he evidently assumed that defendant's hesitancy about assigning the patent was only temporary and he would yield to plaintiff's insistence whenever he should definitely order it done." In view of the defendant's conduct, his concealment of his true intent, and all the facts found by the

master, together with the confidence reposed in the defendant by the plaintiff, and the absence of a refusal to assign the patents, although the plaintiff admitted on cross-examination that he knew in 1921 "the defendant was claiming the patent on the blancher to be his own," in our opinion the plaintiff was not guilty of laches and did not by his delay deprive himself of the right to the patents. *Hawkes* v. *Lackey*, 207 Mass. 424, 430. See *Potter* v. *Kimball*, 186 Mass. 120, 121, 122; *Stewart* v. *Joyce*, 201 Mass. 301, 307.

A decree is to be entered in accordance with the first and second prayers of the bill requiring the defendant to assign to the plaintiff United States Letters Patent No. 1,381,082 for Method and Apparatus for Blanching Peanuts and No. 1,513,373, dated October 28, 1924, for Dispensing Apparatus.

*Ordered accordingly.*