[Civ. No. 24057.   Second Dist., Div. Three.   May 2, 1960.]

ROSE ZAHLER, Appellant, v. COLUMBIA PICTURES CORPORATION (a Corporation) et al., Respondents.

Abraham Marcus for Appellant.

Mitchell, Silberberg & Knupp and Guy Knupp for Respondents.

SHINN, P. J.—Rose Zahler, as successor in interest of Lee Zahler, deceased, brought suit to restrain defendants from exhibiting, by means of television, certain musical compositions of Zahler's. The complaint is in 30 causes of action. It relates to a great number of compositions. These are separated into groups, as to each of which one of the defendants claims the right of reproduction by television. The parties selected the background music of "Crime Takes a Holiday" and agreed that they would try at present the issue of liability of the defendants for having televised the motion picture with the accompanying music. This music consisted of compositions by Zahler and some scores composed by others, all of which Zahler conducted. Plaintiff also sought an injunction, damages and other relief. Upon findings that defendants have the right to use the compositions in the manner which plaintiff disputes, judgment was entered in favor of defendants; plaintiff appeals.

Defendant Station KTTV broadcast the picture, including the background music, on television in July, 1956. It claims to have derived the television rights from separate sources, each competent to grant it.

Columbia Pictures Corporation produced "Crime Takes a Holiday" under contract with Zahler. Zahler either composed the music or conducted the orchestra which recorded it with other music. Our first discussion will relate only to the compositions of Zahler.

Larry Darmour, Inc., was a subsidiary of Columbia. May 26, 1938, Zahler granted a license to Darmour as follows:

"5823 Santa Monica Blvd., Hollywood, California (date) May 26, 1938.

"Larry Darmour, Inc., Hollywood, Cal.

"For and in consideration of the sum of One ($1.00) dollar and other good and valuable considerations, to me in hand paid, the receipt of which I hereby acknowledge, I hereby grant and assign to you, your successors and assigns, the nonexclusive license to record, reproduce and perform publicly throughout the world by any means or method now known to be devised, the musical compositions entitled: 'Rhumba Fiesta No. 476' 'First in Mind No. 529' in and in connection

with the production, reproduction, exhibition and projection for the one motion picture photoplay now entitled: 'CRIME TAKES A HOLIDAY'. Together with the right to make, use and vend any and all records and/or other devices upon which the same may be recorded, reproduced, or otherwise rendered audible. The undersigned further certifies that I have the right mentioned above and I have the full authority to assign such rights for this one production to you.

"This license is granted to you for the entire world, but in respect to the rights of public production and performance granted hereby, this license shall apply only for public reproduction and performance in theatres or other places of public entertainment which, at the time, hold or may obtain valid licenses from the performing rights society or association, if any, having jurisdiction in the country wherein the theatre or place of public entertainment as aforesaid is located, to publicly perform the musical compositions in question.

"It is specifically understood and agreed to you, your successors, and assigns, shall in no way be obligated to pay any fees and/or royalties whatsoever for the use throughout the world of the aforesaid compositions in the event that the same is published.

"All rights and uses of said musical compositions not herein granted are expressly reserved to the undersigned.

"Yours very truly,     By <em>Lee Zahler.</em>"

As plaintiff interprets the agreement, the music, with the picture, could not be reproduced except in a theatre or other place of public entertainment and then only if such theatre or other place is licensed by an authorized performing rights society or association (such as ASCAP). As defendants read the agreement it means that there may be reproduction of the music at any place except in a theatre or other place of public entertainment which has not been licensed for the performance by such society or organization. The trial court agreed with the defendants' construction of the license to Darmour. We do not decide this question. Even if plaintiff's construction were the correct one, which we do not suggest, the judgment would have to stand.

■ There is an independent and sound basis for the judgment in favor of defendants. It may be stated briefly as follows: Zahler transferred his rights and interests in the compositions to an artists' agent, Irving Berlin, Inc., later named Bourne, vesting in the latter ownership of the com-

positions and a right to copyright them; Berlin licensed ASCAP to issue licenses to others to publicly perform the musical compositions in question and ASCAP duly issued such a license to defendant Station KTTV, which reproduced the compositions with the picture on television, in July, 1956. Two agreements of Zahler and Berlin are set out in the margin.[1,2] An agreement identical with (1) was executed by Zahler December 31, 1943.

---

[1] "AGREEMENT between IRVING BERLIN, INC., hereinafter referred to as 'BERLIN' and LEE ZAHLER, hereinafter referred to as 'ZAHLER'.

"WHEREAS, ZAHLER, has composed a large number of musical compositions known as incidental background music and ZAHLER intends to compose, from time to time, additional compositions of the same character.

"Now, THEREFORE, it is hereby agreed as follows:

"1. In consideration of One Dollar ($1.00), receipt whereof is hereby acknowledged, ZAHLER designates BERLIN his exclusive agent and empowers said agent to collect performing fees with respect of all of the incidental background music heretofore composed or hereafter to be composed by ZAHLER during the term of this agreement and licensed by ZAHLER or to be licensed by ZAHLER in connection with any and all motion picture productions.

"2. In order to enable BERLIN to collect such performing fees, it is necessary to constitute BERLIN the owner and the copyright proprietor thereof, and, accordingly, all such incidental background music heretofore composed by ZAHLER or which hereafter and during the term of this agreement may be composed by ZAHLER and which may be licensed for use in the manufacture of motion picture productions, are hereby conveyed to BERLIN with the right to copyright the same in the name of BERLIN throughout the world. Notwithstanding this conveyance, ZAHLER shall continue to have the right to license the use of the incidental background music affected hereby in all motion picture productions to the same extent as if the conveyance had not been made, on condition, however, that BERLIN shall have the exclusive right to collect performing fees with respect to such incidental background music as used in such motion picture productions.

"3. ZAHLER hereby agrees that whenever he licenses the use of any incidental background music affected hereby for recording in connection with a motion picture production, he will advise the producer that BERLIN is the owner of the said composition and of the copyright thereof, and he will require the producer thus licensed to state in every cue sheet relating to such motion picture production that BERLIN is the copyright owner of such incidental background music.

"4. ZAHLER further warrants that he is the owner of every musical composition conveyed to BERLIN hereunder, and he hereby indemnifies and agrees to hold BERLIN harmless by reason of any claim of right asserted by BERLIN with respect to any compositions entered on such cue sheets in the name of BERLIN.

"5. BERLIN will undertake, to the best of its ability, to collect performing fees throughout the world, excluding the United States and Canada, by reason of the public performance of such music, sketches, dialogues, titles, sub-titles, superimposed titles and adaptations, and BERLIN hereby agrees to pay to ZAHLER fifty per cent (50%) of all moneys actually received by BERLIN by reason thereof, after the cost of

It will be observed that the assignment or "authorization" (2) of March 25, 1938, stated that it was for filing with "Various Performing Rights Societies."

Prior to 1945, Berlin, in granting licenses, reserved to itself television rights; thereafter the licenses to KTTV included those rights, in consideration of a fee in excess of 2 per cent of the station's net receipts. Zahler kept his agreement to notify any motion picture producer whom he might license to use a composition that Berlin was the owner of the composition and his agreement to require the producer to state on each cue sheet that Berlin was "the owner of said composition and the copyright thereof."

October 20, 1943, when seeking membership in ASCAP,

---

copying the scores, clerical expense and foreign agents' compensation have been deducted.

"6. ZAHLER will sign any and all papers, assignments, etc., which may be necessary to enable BERLIN to carry out the purpose of this agreement.

"7. This agreement shall commence on the first day of January, 1939 and shall continue for five years thereafter and shall embrace all incidental background music composed by ZAHLER during the period hereof. After the expiration of this agreement, BERLIN shall continue to have the exclusive right thereafter to continue to collect performing fees with respect to all of the incidental background music affected hereby, including all such incidental background music which was licensed by ZAHLER for synchronization use by motion picture producers during the term of this agreement, and such right shall continue so long as copyrights shall subsist with respect to such incidental background music.

"IN WITNESS WHEREOF, the parties hereto have executed this agreement the 25 day of March, 1938.

"IRVING BERLIN, INC.
By ..............................
LEE ZAHLER
/B/ LEE ZAHLER"

(Cue sheets are generally used to determine who has the right to license public performances of the particular music listed. Such a cue sheet was made out and furnished by Zahler designating Berlin as the publisher of the music in "Crime Takes a Holiday.")

---

[2]"Authorization to be Filed with Various Performing Rights Societies.

"THIS IS TO CERTIFY that I have conveyed to Irving Berlin, Inc., 799 Seventh Avenue, New York City, New York, the complete and absolute ownership of all music written originally and especially by me for certain motion pictures, and which music has been or will be synchronized with such motion pictures, beginning January 1st, 1939 and continuing until December 31st, 1943. This grant is subject to my right to synchronize such music and to import the mechanical records thereof synchronized with certain motion pictures into all countries of the world.

"Irving Berlin, Inc. is hereby granted all rights with respect to said music and specifically the exclusive right to collect all performing fees with respect to such music throughout the world.

"Dated March 25, 1938.
/s/ LEE ZAHLER"

Zahler wrote, in part: "Further, I. Berlin, Inc., an ASCAP publisher, is and has been my agent for my music for the collection of royalties from performances in motion picture theatres since December 21, 1933. In fact my agreement with them is still very much alive. As to the amount of my music cleared yearly through I. Berlin, Inc., you may kindly contact Abe Schwartz. I trust you will find my qualification deserving for further consideration in the above matter."

The court found: "17. Irving Berlin, Inc. at all times herein concerned was a member of the American performing rights society known as the American Society of Composers, Authors & Publishers (ASCAP) and had assigned to ASCAP the exclusive right of public performance for all music of which Berlin was the copyright proprietor or to which Berlin had right, title, or interest. . . .

"19. Zahler knew and understood that the performing rights in connection with his background music conveyed to Berlin had in turn been assigned to ASCAP, and that ASCAP had thereby acquired the right to license the public performance of Zahler's music. Zahler advised ASCAP to this effect in a letter dated October 20, 1943.

"20. Berlin, likewise, knew and understood that the exclusive right to collect performing fees on Zahler's music had been conveyed by Zahler to Berlin. On two occasions in 1935 Berlin wrote Columbia Pictures to that effect, stating, 'we have the exclusive right to collect performing fees on any music that he writes for use in films.' . . .

"23. Columbia Pictures Corporation was under contract to Irving Berlin, Inc. in 1938, pursuant to which all rights to public performance of music owned by Columbia had been conveyed to Berlin, and pursuant to which exclusive rights to license public performances and collect all public performing fees had been granted to Berlin. . . .

"27. Starting about 1949 ASCAP licensed the use of its music on television to television broadcasting stations.

"28. ASCAP in turn credited Berlin (Bourne) with royalties in connection with the public performance of its music on television. Specific credit was given to Berlin by ASCAP for royalties from the television exhibition of the motion picture CRIME TAKES A HOLIDAY. . . .

"35. Under the contract agreements between Zahler and Berlin dated December 21, 1933, March 25, 1938, and December 31, 1943, and the authorizations given by Zahler to Berlin dated December 31, 1933, and March 25, 1938, all rights with

respect to background music composed by Zahler in each of the motion picture titles listed in the amended complaint were conveyed by Zahler to Irving Berlin, Inc. (Bourne), and Irving Berlin, Inc. (Bourne) thereby became the owner of all legal rights to such music, and specifically the exclusive right to collect all performing fees with respect to such music throughout the world, including all performing fees derived from television exhibition.''

The court concluded that by virtue of the series of licenses defendants acquired the right to televise the picture ''Crime Takes a Holiday'' including the music which was an integral part thereof. In assailing this conclusion, plaintiff says: ''ASCAP did not even have the right to license performance of the music because Zahler's assignments to Bourne, Inc., from whom ASCAP's rights were derived, were intended to apply only to foreign performances of the music—and then only in theatres and other public places.''

The contention is that Berlin's authorization was merely to collect fees for performances in foreign countries. But the authorization of March 25, 1938, which plaintiff says was in force when the picture was televised provided: ''Irving Berlin Inc. is hereby granted all rights with respect to said music and specifically the exclusive right to collect all performing fees with respect to such music throughout the world.'' And Berlin with the knowledge of Zahler had been representing him from 1938 to 1947 in procuring performances and collecting fees through ASCAP.

Plaintiff reverts to the contention that Darmour was not licensed to reproduce the compositions except in certain theatres and other places of public entertainment and maintains that this limitation is to be read into the agreements with Berlin, the latter's licenses to ASCAP and ASCAP's licenses to KTTV. We cannot agree. Even if the license to Darmour contained such a limitation, which we do not decide, there was no limitation whatever in the transfer to Berlin of all Zahler's property rights in the music. There was no evidence that ASCAP or KTTV had knowledge of any such limitation. The court found there were no secret agreements between Zahler and Bourne with respect to the latter's authority and also found that Zahler knew that the performing rights he had conveyed to Berlin had been by the latter assigned to ASCAP. It was by this means that Zahler expected to be and was made the recipient of fees through the

utilization of the services of Berlin in promoting the repro-
duction of the compositions.

By virtue of the series of licenses, which were unimpeached,
and were adequate for the purpose, the right to broadcast
"Crime Takes a Holiday" with the incidental music was
vested in KTTV at the time of the production of the picture
on television.

As previously stated, Zahler was employed by Dar-
mour to conduct the background music for "Crime Takes a
Holiday." He received compensation therefor according to
the union scale then in effect with the American Federation of
Musicians, of which he was a lifetime member. It is neverthe-
less contended by Mrs. Zahler that she is entitled to restrain
performance of the music on television unless additional com-
pensation is paid. She contends that her husband's contract
to conduct his own and other music was subject to the same
limitation as the license he granted to Darmour, namely, that
the latter's performance rights were restricted to theatres and
other places of public entertainment. We are unable to agree
with the contention that Zahler was entitled to additional
compensation. We have already pointed out that Zahler con-
veyed all his rights to the musical score to Berlin. The very
purpose was to promote the production of the background
music as an integral part of the picture. Furthermore, the
court found that Zahler's services as a conductor and musician
in connection with "Crime Takes a Holiday" and other mo-
tion pictures were rendered without any reservation as to the
use the producer might make of them or as to the manner in
which the completed films might be exploited. Zahler did not
engage the orchestra; the musicians were hired and paid by
Darmour. Zahler was in the same position as the musicians.
As a conductor he had the same rights the other performers
had, and no more. Having been paid for his services, all rights
to the product of those services passed to Darmour.

Where an employe creates something as part of his
duties under his employment, the thing created is the property
of his employer unless, of course, by appropriate agreement,
the employe retains some right in or with respect to the prod-
uct. (*Nelson* v. *Radio Corporation of America,* 148 F.
Supp. 1.)

Plaintiff does not question this rule of law. She contends
only that the musical compositions could be reproduced only
in certain theatres and other places of public entertainment
and that the same limitation was applicable to the use of

Zahler's services as a conductor. If there had been the limitation upon the use of the music as plaintiff contends it no doubt would have been applicable also to the product of Zahler's services as a conductor. But we have seen that the right of defendants to reproduce the picture derived through Berlin and ASCAP was not subject to any limitation as to use which plaintiff reads into the contract with Darmour.

Plaintiff failed to establish that the defendants or any of them made unauthorized use of Lee Zahler's musical composition or his services as a conductor in exhibiting the picture and the music on television. Her prayers for an injunction and for the recovery of a share of the profits earned in television exhibition of the picture were properly denied.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 29, 1960.