[Civ. No. 25640.   Second Dist., Div. One.   Jan. 8, 1962.]

DANIEL ORIFICE FITTING COMPANY, Plaintiff and Respondent, v. JOHN WHALEN et al., Defendants and Appellants.

Cadoo & Tretheway, Catlin & Catlin, Frank D. Catlin and George L. Catlin for Defendants and Appellants.

O'Melveny & Myers, Pierce Works and Everett B. Clary for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment which in effect enjoined the defendants from using or disclosing to

others certain drawings and patterns used or useful in the manufacture of a specialized valve and from manufacturing or selling items depicted therein, and requiring the defendants to deliver the drawings and patterns to plaintiff and to assist plaintiff in obtaining patents on any patentable invention depicted therein.

The complaint in this case set forth several causes of action, however we are concerned with only the third count which set forth in effect that the plaintiff was a corporation organized in 1947 which had succeeded to a sole proprietorship theretofore operated by Paul A. Daniel since 1931; that John Whalen was a resident of Los Angeles County and the other defendant was a corporation; that plaintiff for many years had been engaged in the design, manufacture and sale of products used in industry for the measurement and control of liquids and gases, and among other products had designed, manufactured and sold piston-controlled check valves and orifice fittings and plates. The complaint also set forth some of the problems involved with reference to pressures in pipelines; further it was stated that in 1939 the plaintiff developed a special kind of check valve which was referred to as a piston-controlled check valve and there was set forth a general description of the workings of such a valve and the requirements with reference to having an assortment of valves to accommodate the different volumes and rates of flow, different pressures and different types of materials to be handled; it related that the plaintiff had expended large sums of money in developing the basic design of the piston-controlled valve and in working with other pertinent factors and details with reference to said piston-controlled valve, including the development of the market therefor, and that the result of such effort had been profitable to the plaintiff, the plaintiff being with minor exceptions the only manufacturer of piston-controlled check valves in the United States for the oil and gas industry, excepting for the activities of defendants; it was stated further that the plaintiff through its efforts and money expended developed trade secrets and confidential information of great value to it including, among other things, the calculations and specifications for an assortment of valves and their component parts, the development of information pertaining to materials suitable for the parts and the manufacturing and techniques for the making and assembling of the component parts, the collection of reports of technical data with reference to the performance of said valves, and the

pressures therein; it was set forth that the plaintiff had developed experimental modifications and attachments to its valves which were discussed among the employees of plaintiff (including the defendant Whalen) on a confidential basis, and experimental models were made and operated; that plaintiff had been in the business of designing, manufacturing and selling orifice plates and fittings since 1931 and had expended large sums of money, time and effort thereon; that all of the machines, devices, plans, specifications, drawings, processes, source of supply, reports and other matters related to the matters in part heretofore related were developed by plaintiff as its confidential business information and trade secrets and maintained as such, however they were not patented but were disclosed only to employees of the plaintiff whose work involved their use and to some suppliers; that the use of such information gave to the plaintiff an advantage over its competitors, and such information could not be acquired by a person who did not have access to it without the expenditure of a great amount of time, money and effort, even if such person had a supply of plaintiff's products; that John Whalen was a full-time employee of plaintiff, being from 1945 to 1949 the chief engineer in charge of design, from 1949 to April 30, 1959, was chief engineer in charge of design and production, and from October 1955 to April 30, 1959, was a vice-president of plaintiff and senior officer in plaintiff's Los Angeles plant. It was further alleged that Whalen's duties were, among other things, to design and supervise the design of products manufactured and sold by the plaintiff and to prepare and supervise the preparation of working drawings for the manufacture of the same, to supervise the manufacture of component parts and the assembly of orifice fittings and plates and piston-controlled check valves, to work with other employees to determine materials suitable for the manufacture of component parts, to work with suppliers and subcontractors who made such parts, and to work with plaintiff's patent attorneys to secure proper protection for plaintiff's rights in the inventions; that Whalen prior to his employment did not know any of the trade secrets of plaintiff and he was thereafter entrusted with and given all of the confidential information and trade secrets of plaintiff; that it was an implied condition of his employment that he would not use information so gained for his own use or benefit during or after the employment, that all of his inventions belonged to the plaintiff, that any and all patents and applications for such with reference to such inventions should be

assigned to the plaintiff; that Whalen has now undertaken to use the confidential information and trade secrets for his own use and benefit in breach of his duty and confidence to the plaintiff; further, that all modifications and attachments to plaintiff's products and all new products related thereto that might be conceived by Whalen or under his supervision, and all notes, drawings and specifications of or relating to the same should be fully disclosed by Whalen to plaintiff and should belong to and become the property of plaintiff, and Whalen should not at any time use the same for his own benefit or for the benefit of any person other than plaintiff; that it was an implied condition that Whalen would take all necessary steps to apply for and obtain patents on patentable inventions made by him or under his supervision in connection with the aforesaid matters. It was further alleged that during the time and within the scope of his employment Whalen conceived of, designed improvements and modifications to plaintiff's valves and other products of plaintiff, that Whalen did not disclose the improvements, modifications and products to the plaintiff, and in fact he concealed them and embarked upon a plan to incorporate such improvements and modifications into a line of valves which he himself would ultimately offer to the public as an improved line of valves, and that he would market related products designed by himself as his own products. Further it was alleged that in carrying out said plan Whalen, during his employment by plaintiff, made layouts and tables of detailed specifications incorporating therein the modifications and improvements, together with working drawings of other matters, including some of the component parts; that since Whalen left the employment of plaintiff he made working drawings and patterns as derived from and based upon plaintiff's layouts, drawings and specifications; that by reason of the implied conditions of the employment the designs, inventions, modifications, improvements, layouts, drawings, tables and patterns heretofore referred to were the sole and exclusive property of plaintiff. The allegations continued to the effect that in March 1959 Whalen tendered his resignation from the employment, effective May 15, 1959, although he actually quit work on April 30, 1959, because of accumulated vacation time; that on May 1, 1959, Whalen caused to be filed with the Secretary of State of California the articles of incorporation of Whalen, Inc., of which Whalen and his wife were two of the three organizing directors and that Whalen controlled the company and caused it to do what it did; that there was

printed and circulated among actual and potential customers of plaintiff a brochure and it undertook the manufacture and sale of the products therein described, using therein the designs, inventions, modifications, improvements, layouts, drawings, tables and patterns of the plaintiff in violation of plaintiff's rights and of the implied conditions of the employment; that the defendants could not have manufactured the products which were manufactured without the use of the property of the plaintiff. That one of the modifications designed by Whalen was of an orifice disc.

The cause proceeded to trial, findings of fact were made in which all of the important aspects of the complaint were found to be true, conclusions of law were made which were supported by the findings, and judgment was entered in favor of plaintiff. Findings numbered 8, 9, 12, 13, 14, 14.1, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 29, 30 and 31 are set forth in the footnote.[1]

This appeal followed.

The real questions involved in this case are whether a person who is employed to use his skill and ingenuity along certain well designated lines can conceal from his employer and appropriate to his own use the benefits of the work done by him while an employee within the well defined area of his employment, and further how far an officer of a corporation may go in creating a competing business.

Appellants' main contention appears to be that the evidence was not sufficient to support the findings of fact. It is unnecessary to set forth in detail what the testimony and evidence contain; suffice it to say that there is testimony or evidence which if believed by the trial judge supports each and every finding of the trial court, particularly the findings set forth in the footnote, which are the specific findings to which appellant objects.

In brief the appellant Whalen in this case went to work for the respondent in the job of conceiving and designing improvements and modifications to respondent's product. To the end that Whalen could better perform the duties of his job, the problems and defects in respondent's valves and the needs for improvements therein were reported to Whalen. Whalen for a number of years performed his job; however starting in 1956 he failed to turn over to respondent the product of his work and secreted it to his own use for a later time. He considered carefully the problems involved which

[1]See footnote at end of opinion.

were reported to him, and he devised improvements and modifications which would solve the particular problems but he did not apply such results and work product to his employer—to the contrary he introduced a revised version of his employer's product and converted the benefits thereof to his own use.

As an officer of the plaintiff corporation for four years Whalen participated in management and necessarily owed a fiduciary duty to that company to put forth his best efforts and advance the position of that company in every way possible. Whalen however, contrary to his duty and using confidential information, developed an improved version of the valve and did all he could do to start a directly competitive concern. Because of the limited and exclusive nature of the product every sale by the appellants necessarily cost the respondent a sale.

Where a person is employed to design improvements to the product of his employer, or to design new products for his employer, and he does so, he may not use the results of such work for his own use and benefit, and particularly not to the detriment of his employer. See *Zahler* v. *Columbia Pictures Corp.*, 180 Cal.App.2d 582, 589 [4 Cal.Rptr. 612]; *Standard Parts Co.* v. *Peck*, 264 U.S. 52, 59 [44 S.Ct. 239, 68 L.Ed. 560, 32 A.L.R. 1033]; *Worthington Pumping Engine Co.* v. *Moore* (1903) 19 Times L.R. (England) 84, 20 Rep. Pat. Case. 41, 46; *Standard Brands Inc.* v. *U. S. Partitioning & Packaging Corp.* (E.D.Wis. 1961) 130 U.S.P.Q. 258; *Dowse* v. *Federal Rubber Co.* (N.D.Ill. 1918) 254 F. 308; *E. F. Drew & Co.* v. *Reinhard* (2 Cir. 1948) 170 F.2d 679; *Transparent Ruler Co.* v. *C-Thru Ruler Co.* (1942) 129 Conn. 369 [28 A.2d 232]; *Daily* v. *Universal Oil Products Co.* (N.D.Ill. 1947) 76 F.Supp. 349.

In this case Whalen turned over to his employer the designs and improvements which he made and he assigned several patents to it prior to the time he started to work on the particular designs and improvements in question. Such conduct would seem to support the view that Whalen considered himself bound to do so under the agreement of employment. See *Velsicol Corp.* v. *Hyman*, 405 Ill. 352 [90 N.E.2d 717]; *New Jersey Zinc Co.* v. *Singmaster*, 71 F.2d 277; *E. F. Drew & Co.* v. *Reinhard*, 170 F.2d 679; *Marshall* v. *Colgate-Palmolive-Peet Co.*, 76 F.Supp. 378, 175 F.2d 215; *Magnetic Mfg. Co.* v. *Dings Magnetic Separator Co.*, 16 F.2d

739; *National Development Co.* v. *Gray*, 316 Mass. 240 [55 N.E.2d 783, 153 A.L.R. 973].

In *Solomons* v. *United States* (1890) 137 U.S. 342, 346 [11 S.Ct. 88, 34 L.Ed. 667], the court said:

". . . If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer. . . ."

The *Solomons* case has in effect been approved by the Supreme Court in later decisions.

The case of *Banner Metals, Inc.* v. *Lockwood*, 178 Cal. App.2d 643 [3 Cal.Rptr. 421], relied upon by the appellants, written in this division of this court, is not comparable factually to the case at hand.

Appellants assert that Whalen did his work on the new designs and improvements while away from the plaintiff's plant and therefore the product of such off hours was his own. It is difficult to understand how Whalen could cut his mind off and on at will under the circumstances, i.e., think of things during the lunch hour, for example, which would constitute an improvement to plaintiff's product, and later claim such improvement as his own because he was not working for the company at that particular moment when the thought struck him. In *National Development Co.* v. *Gray*, 316 Mass. 240, 250 [55 N.E.2d 783, 788, 153 A.L.R. 973, 981], it is stated:

". . . Even though the drawing was prepared in his own home, we think it came within the scope of his employment by the plaintiff and that it belonged to the plaintiff no less than if the drawing was made at the plaintiff's shop. [Citing cases.]"

*Parker Rust-Proof Co.* v. *Allen*, 231 Mich. 69 [203 N.W. 890], contains the following language: ". . . I do not understand the rule to be that one employed as an inventor and paid a salary as such may, because the successful idea comes to him when away from the plant, appropriate to himself the invention or sell it to the competitor of his employer. . . ."

See also *United States* v. *Houghton* (D.C.Md. 1927) 20 F.2d 434, affd. (1928) 23 F.2d 386, cert. den. (1928) 277 U.S. 592

[48 S.Ct. 528, 72 L.Ed. 1004]; *Crown Cork & Seal Co.* v. *Fankhanel* (D.C.Md. 1943) 49 F.Supp. 611; *Detroit Lubricator Co.* v. *Lavigne Mfg. Co.* (1908) 151 Mich. 650 [115 N.W. 988]; *Forberg* v. *Servel, Inc.* (D.C.N.Y. 1949) 88 F.Supp. 503; *Hoyt* v. *Corporon* (1929) 268 Mass. 544 [168 N.E. 94]; *North American Philips Co.* v. *Brownshield* (S.D.N.Y. 1953) 111 F.Supp. 762.

If this were a shop right case, which it is not, it might well become important to know whether the work in question was done on company time or whether the employee was one who unfortunately for the company employer could never think of anything of benefit to the company while on duty, but somehow could produce the answers to the problems of the employer in off hours. Here, however, Whalen was employed in a category which does not contemplate a shop right.

■ Appellants further deny in effect that the matters involved constituted trade secrets or that such were patentable inventions. In any event in this case the rights of respondent came about from the agreement made and entered into by and between the parties. In *Hollywood Motion Picture Equipment Co.* v. *Furer,* 16 Cal.2d 184, 188 [105 P.2d 299], it is said:

''A further ground urged to establish the insufficiency of the complaint is that the complaint does not allege that plaintiff's invention was a secret invention or allege facts from which such secrecy can be determined. Said statement is true but upon the facts alleged plaintiff is not required to rely upon the secrecy of its invention. We have here a relationship created by a contract where the manufacturer took into his custody certain patterns created by the inventor for the purpose of manufacturing castings from them for the inventor. Defendant did not acknowledge the dominance of a fundamental precept of honesty and fair dealing, enjoined by the Decalogue and supported by prevailing moral concepts. 'Thou shalt not steal' applies with equal force and propriety to the industrialist of a complex civilization as to the simple herdsman of ancient Israel. Where a bailee of an article has accepted it under definite terms to hold it and to use it for the benefit of the bailor, a confidence has been reposed which should remain inviolate. The mere fact that the ingenious principle materialized in the thing bailed may be known to all the world would not depreciate the sanctity of the contract between the bailor and the bailee. . . .''

There can be no doubt that Whalen breached his duties as an officer of the respondent corporation. He was an officer in charge of an important part of the respondent's business and at the same time he was creating improvements to the respondent's product, he was concealing such improvements and stealthily doing all that was necessary to set up a competing business. ▆ In the case of *Hall* v. *Dekker,* 45 Cal. App.2d 783, 786 [115 P.2d 15], it is said:

". . . It is the established law that a director or officer of a corporation may not enter into a competing enterprise which cripples or injures the business of the corporation of which he is an officer or director (*Red Top Cab Co.* v. *Hanchett,* 48 F.2d 236, 238; *Hussong Dyeing Mach. Co.* v. *Morris* (N.J.) 89 A. 249, 250). . . ." See also *Cavanaugh Nailing Machine Co.* v. *Cavanaugh,* 167 Cal.App.2d 657, 661 [334 P.2d 954]; *Industrial Indemnity Co.* v. *Golden State Co.,* 117 Cal.App.2d 519 [256 P.2d 677]; *Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185 [135 P. 496].

In *Guth* v. *Loft, Inc.,* 23 Del. Ch. 255 [5 A.2d 503, 510], cited and followed in the *Industrial Indemnity* and *Hall* cases, the court said: "Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. A public policy, existing through the years, and derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers. . . ."

In *Standard Brands, Incorporated* v. *United States Partitioning & Packaging Corp.,* 130 U.S.P.Q. 258 (1961) at pages 266-267, it is set forth: "The actionable wrongs alleged here are premised upon violations of fiduciary duty by the managerial employees of American. Every agent owes his principal the duty of undivided loyalty. During the course of his agency he may not undertake or participate in activities adverse to the interests of his principal. . . . In the absence of an agreement to the contrary—and there is no evidence of any con-

tractual limitations binding on these defendants—an agent is free to engage in competition with his principal after termination of his employment. Furthermore, he may plan and develop his competitive enterprise during the course of his agency provided the particular activity engaged in is not against the best interests of his principal. . . . Protection of the principal's interest requires a full disclosure of acts undertaken in preparation for entering into competition. . . .''

██ Appellants further contend that the court erred in failing to find on certain claimed material facts. A reading of the findings convinces us that they are determinative of the case. The failure, if there was a failure to find on other facts, is immaterial. See *Virtue* v. *Flynt,* 164 Cal.App.2d 480, 484 [330 P.2d 879].

The judgment in this case is under the circumstances fair and equitable. See *E. I. du Pont de Nemours Powder Co.* v. *Masland,* 244 U.S. 100 [37 S.Ct. 575, 61 L.Ed. 1016]; *Hyde Corp.* v. *Huffines,* 314 S.W.2d 763, 778; *K & G Oil Tool & Service Co.* v. *G & G Fishing Tool Service,* 158 Tex. 566 [314 S.W.2d 782]; *Sketchley* v. *Lipkin,* 99 Cal.App.2d 849 [222 P.2d 927].

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 7, 1962. Peters, J., was of the opinion that the petition should be granted.

---

[1]''8. Beginning in the year 1937 and continuing to the present time, plaintiff has spent large sums of money in developing the concept and basic design of its piston controlled check valve, in developing the specifications for a large assortment of said valves of various sizes and pressure ratings, and in preparing manufacturing drawings for said valves.

''9. Plaintiff has kept the manufacturing drawings of its piston controlled check valve confidential. It has disclosed said manufacturing drawings only to persons within its employ who have needed the same in the performance of their duties for said plaintiff, and it has disclosed said drawings to a limited number of customers only on limited occasions when the customer involved had particular reason to need the same. No one could manufacture said valves without said drawings except with the expenditure of a great amount of time and money, if at all.

''12. Defendant John Whalen's duties as chief engineer in charge of design and later chief engineer in charge of design and production called for the use by said defendant of his knowledge, skill and ability as a design engineer and of his inventive faculties for the benefit of plaintiff. Said duties included the following:

"(a) The development, design and redesign of products manufactured and sold by plaintiff, including piston controlled check valves, and improvements, modifications and attachments thereto;

"(b) The solution of problems arising in the field in connection with the use and design of plaintiff's piston controlled check valves by conceiving and designing improvements and modifications to prevent such problems from recurring in the future;

"(c) The development and design of special modifications and adaptations of plaintiff's piston controlled check valve for special uses and service conditions;

"(d) Working with plaintiff's patent attorneys to secure appropriate patent protection for inventions, developments and designs made by defendant John Whalen of the kind set forth in subparagraphs (a), (b) and (c) above and assigning to plaintiff all rights therein;

The aforesaid duties were the duties of defendant John Whalen during the entire period of his employment with plaintiff. Said defendant was at no time relieved of said duties or instructed to discontinue the redesign and improvement of plaintiff's piston controlled check valve. None of defendant John Whalen's recommendations for changes in plaintiff's products or for the addition of modifications or attachments thereto, made pursuant to said defendant's duties as aforesaid, were rejected by plaintiff at any time.

"13. Defendant John Whalen's duties as chief engineer in charge of production included the following:

"(a) To supervise the manufacture of component parts of, and the assembly of, piston controlled check valves;

"(b) To select suppliers of raw materials and component parts for the manufacture of piston controlled check valves by plaintiff.

"14. In his capacity as vice president of plaintiff, defendant John Whalen received a salary and bonus commensurate with the position, and he exercised the authority of an officer of the corporation over persons in the manufacturing department of plaintiff. Said department included the creation of new products to be manufactured and sold by the company and the manufacture of the products the company was selling.

"14.1. At no time did defendant John Whalen enter into an express written or oral contract with plaintiff not to compete against plaintiff.

"15. In the course of defendant John Whalen's employment as aforesaid, plaintiff entrusted defendant John Whalen with its manufacturing drawings, and other employees of plaintiff were instructed to, and did, report to defendant John Whalen problems that were experienced in the field in connection with the use or design of plaintiff's piston controlled check valve and all defects in design that were discovered. This was done for the purpose of enabling defendant John Whalen to perform his duties for plaintiff as stated in Paragraph 12. Defendant John Whalen received the aforesaid manufacturing drawings and reports of problems and studied and learned the contents thereof. Said reports of problems were not disclosed to persons outside the employ of plaintiff. Without access to said drawings and reports, defendant John Whalen could not have done the things stated in Paragraphs 20, 21, 22, 23 and 25 without the expenditure of substantially more time and money than he actually spent, if at all.

"16. In the course of his employment as aforesaid and prior to the events set forth in Paragraphs 20, 21, 22 and 23, defendant John Whalen conceived, developed and designed certain new products to be manufactured and sold by plaintiff; certain improvements and special modifications and adaptations of plaintiff's products, including plaintiff's piston controlled check valve; additional sizes of piston controlled check valves not theretofore manufactured by plaintiff; and certain improvements and modifications of, and attachments to, plaintiff's piston controlled check valve intended for the purpose of eliminating problems

that had been experienced in the field in the performance, use and design of plaintiff's piston controlled check valve. Defendant John Whalen applied for patents on such of the aforesaid inventions as were thought to be patentable, and assigned said applications to plaintiff.

"17. Defendant John Whalen's employment with plaintiff was not limited to specific hours of work. In said employment he was expected to and did do work for plaintiff in the evening and on week ends, both at and away from plaintiff's premises.

"18. It was an implied condition of defendant John Whalen's employment with plaintiff that all improvements, modifications and attachments to plaintiff's piston controlled check valve and all new products related thereto that might be conceived or designed by defendant John Whalen during the period of his employment with plaintiff, and all notes, drawings or specifications of or relating to the same, should be fully disclosed by defendant John Whalen to plaintiff and should belong to and become the property of plaintiff, and that defendant John Whalen should not at any time use the same for his own benefit or for the benefit of any person other than plaintiff, and that he would take all steps necessary and appropriate, including the execution of appropriate documents, to apply for and obtain patents on patentable inventions made by him in connection with any of the aforesaid matters and to assign his applications for such patents to plaintiff.

"19. The implied conditions of defendant John Whalen's employment as aforesaid applied to work done by him at his home in the evening hours, and on week ends, holdiays [sic] and vacations.

"21. The Series '7' valve designed by defendant John Whalen as aforesaid is a redesigned version of plaintiff's piston controlled check valve. It has the same principal component parts and it functions in the same way as plaintiff's piston controlled check valve. It differs only in that it contains design features added for sales appeal and improvements conceived and designed by defendant John Whalen while he was in the employ of plaintiff as a means of solving problems and defects experienced in the performance and design of plaintiff's piston controlled check valve. Said problems and defects had been learned by defendant John Whalen in the course of his employment with plaintiff or had been reported to him by other employees of plaintiff in confidence for the purpose of enabling defendant John Whalen to perform his duties for plaintiff as stated in Paragraphs 12 and 15. The conception and design of these sales features and improvements, and the redesign of plaintiff's piston controlled check valve to incorporate the same, was the kind of thing defendant John Whalen was employed by plaintiff to do as plaintiff's chief engineer in charge of design and later in charge of design and production and would be beneficial and useful to plaintiff. The market for said Series '7' valve is the same as the market for plaintiff's piston controlled check valve.

"22. The Series '8' valve developed and designed by defendant John Whalen as aforesaid is made by modifying the Series '7' valve and adding an attachment thereto. Plaintiff's piston controlled check valve is susceptible to a similar modification and attachment. It was the kind of modification of and attachment to plaintiff's piston controlled check valve that defendant John Whalen was employed to develop and design for plaintiff and would be useful and beneficial to plaintiff.

"23. The aforesaid Series '9' valve is a special modification of the piston controlled check valve (Series '7' valve) designed by defendant John Whalen as stated in Paragraph 20. Plaintiff's piston controlled check valve is susceptible to a similar modification. Said Series '9' valve is the kind of special modification said defendant was employed to conceive and design for plaintiff and would be useful and beneficial to plaintiff.

"24. The work done by defendant John Whalen as stated in Paragraphs 20, 21, 22 and 23 was the kind of work which plaintiff employed

him to do for plaintiff and was within the scope of said employment.

"25. Defendant John Whalen did the things set forth in Paragraphs 20, 21, 22 and 23 with the intention and for the purpose of creating and undertaking a business directly competitive with the business of plaintiff. With this purpose and intent, said defendant did the following additional things during said period from November 1956 to April 30, 1959:

" (a) He caused patterns to be made for use in the casting of the component parts of most sizes and pressure ratings of the Series '7' valves for which he had made designs as aforesaid, and he caused patterns to be made for the external parts of the 2″ Series '8' valve;

" (b) He caused castings to be made of the internal piston for each size of piston controlled check valve he designed, and he caused an aluminum casting to be made, for the purpose of making photographs for defendant's catalog, of the body of a 2-inch piston controlled check valve, of a cylinder operated pneumatic and/or hydraulic power control valve and of an automatic by-pass and/or shut-in valve;

" (c) He prepared the contents of defendants' catalog by means of which he intended to offer for sale the valves designed by him as aforesaid;

" (d) He employed an advertising agency to assist him in the arrangement and printing of said catalog;

" (e) He prepared a mailing list of prospective customers for the valves designed as aforesaid;

" (f) He organized defendant corporation.

"26. Defendant John Whalen did not do any of the physical work connected with those activities set forth in Paragraphs 20, 21, 22, 23 and 25 between the hours of 8:00 A. M. and 12:00 Noon, or 1:00 P. M. and 5:00 P. M. on week days, nor upon the premises or with the tools of plaintiff. Some of the mental work involved in said activities was done by defendant John Whalen on plaintiff's premises during said hours. Plaintiff did not bear any of the expense incurred by defendant John Whalen in doing the aforesaid work.

"27. Defendant John Whalen concealed from plaintiff the fact that he was engaging in the activities set forth in Paragraphs 20, 21, 22, 23 and 25. Defendant John Whalen at no time offered to plaintiff any of the developments or designs referred to in Paragraphs 20, 21, 22 and 23.

"29. As a result of the activities of defendant John Whalen as stated in Paragraphs 20, 21, 22, 23, 25 and 28, said defendant was able to advertise widely in the trade and offer for sale, through defendant Whalen, Inc., to the market theretofore served exclusively by plaintiff, a redesigned version of plaintiff's piston controlled check valve and modifications and attachments thereto, within one month from the time he left his employment with plaintiff. If said competing business were carried on to any substantial degree it would cripple and injure the business of plaintiff.

"30. On or about June 5, 1959, defendants commenced circulation of the catalogs prepared by defendant John Whalen while in the employ of plaintiff as aforesaid, and since that time have been circulating said catalogs and soliciting the business of companies engaged in the market heretofore served exclusively by plaintiff. Said defendants have caused various sizes of the Series '7' valve described in defendants' catalog to be manufactured and have sold thirty-eight (38) of said valves to the public. Said defendants are still engaged in, and intend to continue to engage actively in, said competitive business.

"31. The continued manufacture and sale of piston controlled check valves, cylinder operated pneumatic and/or hydraulic power control valves, and automatic by-pass and/or shut-in valves pursuant to the designs conceived by and reduced to writing by defendant John Whalen during his employment with plaintiff as aforesaid will irreparably injure plaintiff."