[Civ. No. 21557. First Dist., Div. Two. Aug. 19, 1964.]

SEQUOIA VACUUM SYSTEMS et al., Plaintiffs and Respondents, v. MALCOLM STRANSKY, Defendant and Appellant.

282

Erskine & Tulley and William S. Boyd, Jr., for Defendant and Appellant.

Truce & Veal, Harlan K. Veal and Travis M. Jackson for Plaintiffs and Respondents.

TAYLOR, J.—This is an appeal by defendant, Malcolm Stransky, from a judgment in favor of plaintiffs, Sequoia Vacuum Systems and Arthur C. White, in an action for unfair competition and breach of fiduciary duty. Appellant Stransky and the other defendants were charged with certain concealed activities on behalf of respondents' competitor, defendant Beamco. The complaint, charging violations of fiduciary duties and certain trade secrets, prayed for an injunction restraining appellant and other defendants from continuing to compete and for compensatory and punitive damages.

The trial court found that appellant, while a director and officer of respondent corporation, entered into a competing business and used his position of trust and confidence to further his own private interests, and concluded that, in

concealing his actions, appellant was guilty of a breach of his fiduciary relationship. The judgment against appellant granted the injunctive relief requested and awarded respondents actual damages of $1,600 and exemplary damages of $5,000. The court entered judgment in favor of the other defendants.

The contentions on appeal concern the sufficiency of the evidence to sustain the finding that appellant violated his fiduciary duty; the propriety of the compensatory and exemplary damages; and the allowance, as an item of costs, of expenses incurred by respondents in borrowing money to deposit a cash bond in lieu of a surety bond.

The appeal is on a settled statement that discloses the following relevant facts: In 1956, Sequoia Manufacturing Company, hereafter referred to as Sequoia, formed a wholly owned subsidiary, respondent Sequoia Vacuum Systems, hereafter referred to as Vacuum, to design, produce and sell central vacuum systems. From the formation of Vacuum in 1956 until March 1961, appellant was secretary-treasurer and vice president of Sequoia and was one of its three directors. Until May 31, 1960, he owned 22 per cent of Sequoia's outstanding stock. Appellant was also a director and secretary-treasurer of Vacuum. His duties included the design and production of a central vacuum system. He was Sequoia's plant manager for the Vacuum operation.

In October 1958, because the Vacuum operation was not profitable, Sequoia agreed to sell all of the stock of Vacuum to respondent Arthur C. White, but retained certain checks and controls over the business. Sequoia manufactured and assembled the system for Vacuum with declining intensity until Vacuum established its own assembly facilities. After this time, Sequoia continued to purchase and assemble certain parts of the Vacuum system and assisted Vacuum in purchasing other items and by extending credit. In May 1960, Dearborn Stove Company,[1] a foreign corporation, became the successor in interest of Sequoia. During these changes of ownership, appellant continued in his capacity as an officer, director and employee of Vacuum until March 1961, when his involvement with Vacuum's competitor, defendant Beamco, was discovered and resulted in his removal.

Appellant's involvement with Beamco apparently began in the summer of 1959, when Sequoia's purchasing agent and production manager, Breslin, approached the manufacturers

---

[1]Both Sequoia and Dearborn were named as defendants but defaulted.

of the domes used by Vacuum about the possibility of spinning domes for a business that Breslin indicated might be formed and requested that the matter be kept confidential. In May 1960, appellant, Breslin, Sequoia's chief engineer Sanders, Boyd and Swanson began to have discussions in the evenings and on weekends about entering the central vacuum system field in competition with Vacuum. All except Swanson were employees of Sequoia and had originally worked with appellant in the development and production of Vacuum's system.

Appellant actively engaged in the design of the competing system by making most of the drawings. He initialed these drawings ''MOE'' instead of signing his initials ''MNS'' as he thought it best that his real initials not appear because of his relationship to Sequoia. The drawings that appellant made for Vacuum's competitior were virtually identical to Vacuum's production model at that time, including certain custom-made components originally designed by appellant. In June 1960, Breslin presented the dome spinner with plans for a head to be spun and again requested that the matter be kept confidential.

Beamco was incorporated on August 22, 1960, with an issue of 18,250 shares limited to appellant and the others who had worked with him on the competing system. Appellant, Breslin and Swanson each purchased 5,000 shares of Beamco, and Sanders, the remaining 3,250. All except appellant became directors or officers of Beamco. As indicated above, at the time, appellant, Breslin and Sanders were employees of Sequoia. Subsequently, Beamco's first unit was produced and prepared for sale.

The trial court found that neither appellant nor any of the other defendants had an agreement with either Vacuum or Sequoia not to disclose the information concerning the development, assembly, manufacture and sale of the central vacuum system developed. The court further found that there were a number of manufacturers of vacuum cleaning systems similar in appearance and basic principles to those of Vacuum and Beamco, which were very similar to each other; that some of the component parts used by both Vacuum and Beamco were available and advertised in catalogs from other firms; that while no trade secrets were involved, some of the component parts used by both Vacuum and Beamco in the assembly of their units were not available but had to be obtained on a custom basis; that Beamco utilized a number

of the custom suppliers of Vacuum and thus was able to obviate large investments of money in the development of its system; that in addition, the method of encasing or attaching wires to a plastic or rubber hose with a switch in the handle was originally conceived and commenced for utilization in the Vacuum system; and that specifications for a similar prototype were developed by a supplier for Vacuum who subsequently became the supplier for Beamco's switch system.

The court found that without the consent or knowledge of respondents, appellant, while an officer and director of Vacuum, used his position of trust and confidence to further his interests in Beamco and caused Vacuum an actual loss of $1,600 and that in so concealing his actions, Stransky had been guilty of oppressive and malicious acts and had breached his fiduciary relationship with Vacuum.

The first major contention on appeal is that the evidence is insufficient to support the court's finding that appellant's activities relating to Beamco were a violation of his fiduciary duty to Vacuum.

■ Generally, directors and officers of a corporation are not by reason of the fiduciary relationship they bear to the corporation and its stockholders precluded from entering into and engaging in a business enterprise independent from, though similar to, that of the corporation, provided that in so doing, they act in good faith and do not interfere with the business enjoyed by the corporation (*Industrial Indem. Co.* v. *Golden State Co.,* 117 Cal.App.2d 519, 533 [256 P.2d 677]).

■ However, a party may not enter into a competing enterprise which cripples or injures a business or corporation of which he remains an officer or director (*Daniel Orifice Fitting Co.* v. *Whalen,* 198 Cal.App.2d 791, 800 [18 Cal.Rptr. 659]). He may not seize for himself, to the detriment of his company, business opportunities in the company's line of activities. ■ If he does so, in violation of his fiduciary duty, the corporation may claim for itself all benefits so obtained (*Xum Speegle, Inc.* v. *Fields,* 216 Cal.App.2d 546, at pp. 554-555 [31 Cal.Rptr. 104]).

■ Appellant argues that the *Whalen* case, *supra,* is distinguishable since his drawings, subsequently used by Beamco, were not within the scope of his duties as an employee of Vacuum after 1958. Appellant's argument erroneously focuses only on his duties as secretary-treasurer of Vacuum and ignores the fact that in addition, he was also one of its three directors and had previously had all the responsibility for

the design and production of the Vacuum system. The *Whalen* case clearly indicates that, while technically not trustees, corporate officers stand in a fiduciary relation to the corporation and its stockholders. Here, likewise, the actionable wrong is premised upon appellant's violation of his duties as a managerial employee and director of the respondent corporation (*Daniel Orifice Fitting Co.* v. *Whalen, supra,* at p. 800).

■ Appellant's relationship to the respondents was one of agency. Every agent owes his principal the duty of undivided loyalty. During the course of his agency, he may not undertake or participate in activities adverse to the interests of his principal. In the absence of an agreement to the contrary, an agent is free to engage in competition with his principal after termination of his employment but he may plan and develop his competitive enterprise during the course of his agency only where the particular activity engaged in is not against the best interests of his principal.

■ Appellant argues that all his activities were within the permissible scope of seeking other employment and buying shares of a competitor. But the protection of the principal's interest requires a full disclosure of acts undertaken in preparation of entering into competition (*Daniel Orifice Fitting Co.* v. *Whalen, supra,* at p. 801). Here, the uncontroverted evidence established that in making the drawings for the Beamco system, appellant falsified his initials because of his relationship with Sequoia. It is this very lack of disclosure which distinguishes the instant case from *Banner Metals, Inc.* v. *Lockwood,* 178 Cal.App.2d 643 [3 Cal.Rptr. 421], and other authorities cited by appellant.

■ The fact that the drawings and appellant's major contribution to Beamco were made before the incorporation of Beamco and that subsequently he merely became a major stockholder rather than a director of Beamco, does not change the picture. Appellant's primary duties of loyalty were to Vacuum. He was not employed in a category which contemplated shop rights. Although many of the components of both systems were matters of public knowledge, or otherwise available, appellant's particular contribution was the design of the custom-made components which enabled Beamco to obviate a large investment in the development of its own system. He deprived Vacuum of the full benefit of the profit and skill which his ability as the designer of its system and plant manager had brought to it. He clearly used his position of trust and confidence to further his private interests as a

subsequent major stockholder of Beamco at the expense of Vacuum.

As a fiduciary, appellant took advantage of an opportunity for his own self-interest when the interests of the corporation justly called for protection. ■ The determination of the particular factual circumstances and the application of the ethical standards of fairness and good faith required of a fiduciary in a given situation are for the trier of facts (*Industrial Indem. Co.* v. *Golden State Co., supra,* at p. 534). Here, the evidence overwhelmingly supports the court's finding that appellant was guilty of a breach of his fiduciary obligation to respondents.

■ Appellant argues that there were no actual damages traceable to his conduct and that the court, therefore, erred in awarding either actual or exemplary damages. The uncontroverted evidence indicates two occasions upon which Beamco and Vacuum submitted competitive bids. Both times, Beamco was awarded the contract although Vacuum's bid on each occasion was substantially lower. Had Vacuum's bids been successful, its profits on the two contracts would have been $1,600. We are not impressed with appellant's contention that the actual damages to respondents were attributable solely to the conduct of Beamco, and that judgment in its favor left no grounds for an award of exemplary damages against appellant. As discerned from the findings, the trial court could reasonably infer that appellant's activities in designing the custom-made components of the competing system for Beamco, and not price considerations, were primarily responsible for the respondents' loss of the contracts in question.

■ Appellant further contends that the damages awarded were totally unjustified because the evidence showed that Vacuum was making as much profit at the time of trial as it did prior to the formation of Beamco. In *Xum Speegle, Inc.* v. *Fields, supra,* the plaintiff corporation brought an action against the defendant for breach of a fiduciary relationship in establishing a competing business while still an officer and director. As we noted at page 555, the mere fact that the corporation's net profits increased sheds little light on the actual damage sustained. Similarly here, it is entirely conceivable that there could have been an increase in overall net profits due to reasons entirely unrelated to appellant's activities. The fact remains that the net profits would have been even greater had not respondents lost the two contracts in question. We conclude that the uncontroverted evidence

demonstrates that there was a loss to respondents of $1,600 in profits on the two contracts as a result of appellant's breach of duty.

Appellant, apparently relying on sections 3300 and 3301 of the Civil Code, argues that any damages awarded in this case must be limited to $1,600 and that punitive damages are improper. Those sections pertain to breach of contract. The breach of obligation here involved is not one based on contract but rather on the fiduciary relationship. Exemplary damages may be imposed in addition to actual damages for the breach of a fiduciary relationship. (*Devers* v. *Greenwood,* 139 Cal.App.2d 345 [293 P.2d 834]). Here, there was ample evidence from which the court could find the requisite malice for the award of exemplary damages. The court properly concluded that section 3294 of the Civil Code was applicable (*Clapp* v. *Vatcher,* 9 Cal.App. 462, 466 [99 P. 549]; *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 427 [106 P.2d 423]).

 The trial court erred in permitting as an item of costs the interest paid by the respondents in the amount of $509.48 on cash which they borrowed and deposited as an undertaking on the issuance of the preliminary injunction. In 1951, Code of Civil Procedure section 1035 was enacted, providing that a premium on a surety bond is a proper item of costs unless the court finds the bond unnecessary to the proceeding. Respondents argue that since Code of Civil Procedure section 1054a permits a cash deposit in lieu of a surety bond, interest is allowable. However, the courts have strictly construed the statutes permitting costs and only those items specifically enumerated are recoverable (*Moss* v. *Underwriters' Report, Inc.,* 12 Cal.2d 266 [83 P.2d 503]). The necessity to set limits is obvious and dictates a close adherence to the clearly expressed legislative intent (*Agnew* v. *Cronin,* 167 Cal.App.2d 154 [334 P.2d 256]; *Wilson* v. *Board of Retirement,* 176 Cal.App.2d 320 [1 Cal.Rptr. 373]). For example, the extension here urged would logically permit a party who was not required to borrow but could deposit his own money, to claim as costs the interest which he might otherwise be acquiring through investment elsewhere. The claim must be denied.

The judgment is reversed as to cost item in the amount of $509.48, and affirmed in all other respects. Respondents to have their costs on appeal.

Shoemaker, P. J., and Agee, J., concurred.