184 Cal.App.4th 438 (2010)
109 Cal.Rptr.3d 77
STEVE ROSSA et al., Plaintiffs and Respondents,
v.
D. L. FALK CONSTRUCTION, INC., Defendant and Appellant.
No. A125567.
Court of Appeals of California, First District, Division Two.
May 6, 2010.
*440 Law Office of Tony J. Tanke and Tony J. Tanke for Defendant and Appellant.
McLennon Law Corporation, Daniel F. McLennon and Marc L. Sherman for Plaintiffs and Respondents.

OPINION
RICHMAN, J.
A party required to post an appellate bond is statutorily entitled to recover the premiums necessary for the bond if that party prevails on the appeal. (Code Civ. Proc., § 1033.5, subd. (a)(6).) Rule 8.278(d)(1)(F) of the California Rules of Court specifies that a recoverable cost of appeal is "The cost to procure a surety bond, including the premium and the cost to obtain a letter of credit as collateral, unless the trial court determines the bond was unnecessary."[1] The question presented is whether this rule allows the recovery of interest paid on sums borrowed to fund a letter of credit used to secure the undertaking. We conclude that the rule in its current form does not include interest as part of "the cost to obtain a letter of credit," the same conclusion reached by the trial court. We thus affirm.

BACKGROUND
After a jury awarded plaintiffs Steve and Connie Rossa (plaintiffs) $100,000 for breach of contract, the trial court added approximately $680,000 in costs, expert witness fees, and attorney fees pursuant to the contract they had with defendant D. L. Falk Construction, Inc. (Falk). Falk appealed only from the fee award, which we reversed. Concluding that the fee award was an abuse of discretion because the trial court did not explain why plaintiffs should be awarded the full amount requested when they had prevailed on only one of five causes of action, we remanded in order that the trial court could consider this issue of apportionment. We also awarded Falk its costs on appeal. (Rossa v. D.L. Falk Construction, Inc. (Sept. 9, 2008, A116151) [nonpub. opn.].)
On remand, Falk filed a memorandum of costs seeking (among other items) $28,650 for "Premium on ... surety bond on appeal"; $950 subsequently amended to $2,734for "Other expenses reasonably necessary to secure surety bond"; and $99,289.81 for "Other: Int[erest] on LOC [line of credit] to Secure Bond."
*441 The details of the interest item were explained in a declaration by Janice Sutton, a vice-president of Falk: "In order to obtain the issuance of the appellate bond in the amount of $955,000, the surety required [Falk] to procure a Standby Letter of Credit, having an acceptable financial institution guarantee payment in the event a claim was made against the bond. At the time, [Falk] was banking with Wells Fargo Bank . . . [which] required [Falk] to open a deposit account and deposit funds as security totaling $954,070." Falk provided $483,070, and its president, David Falk, provided $471,000, sums drawn from existing lines of credit. The $99,289.81 was the combined total of "interest expense,"[2] that is, interest paid by Falk and David Falk on these sums from the posting of the undertaking to its exoneration by the trial court. The $1,784 added as "Other expenses reasonably necessary to secure surety bond" appears to have been a special interest charge.[3]
Plaintiffs moved to strike these items on the ground they were not reimbursable under rule 8.278. Falk responded that the expenses were proper under the rule as construed in Cooper v. Westbrook Torrey Hills (2000) 81 Cal.App.4th 1294 [97 Cal.Rptr.2d 742] (Cooper). After hearing extensive argument, the trial court determined that Cooper was distinguishable, and granted plaintiffs' motion to strike Falk's claim for the $1,784 and $99,289.81 of interest incurred on the sums borrowed to fund the letter of credit used to collateralize the undertaking.[4]

DISCUSSION
The essence of Falk's position is not hard to comprehend: money paid as interest on money borrowed to obtain a letter of credit which is used to secure an undertaking is an out-of-pocket expense and thus a "cost to procure a surety bond, including . . . the cost to obtain a letter of credit as collateral" within the plain language of rule 8.278(d)(1)(F). Citing the interlocking *442 definitions of "cost," "price," and "expenditures" in Black's Law Dictionary, Falk argues: "In order to obtain the letter of credit to secure the bond, Falk was required to incur an obligation to pay interest. Accordingly, interest payments were part of `[t]he amount paid or charged' for the letter of credit, and were part of `consideration asked for [and] given in exchange for' the letter of credit. They were indeed `paid out' by Falk, and the obligation to make such payments was required to `accomplish [the] result' of obtaining the letter of credit as collateral to secure the appeal bond. [¶] Simply put, the obligation to pay interest was part of the consideration of the letter of credit and must therefore be considered part of the `cost' of obtaining such letter of credit." We are not persuaded.
(1) Rules of court are examined according to the same canons governing construction of statutes. (Silverbrand v. County of Los Angeles (2009) 46 Cal.4th 106, 125 [92 Cal.Rptr.3d 595, 205 P.3d 1047]; Alan v. American Honda Motor Co., Inc. (2007) 40 Cal.4th 894, 902 [55 Cal.Rptr.3d 534, 152 P.3d 1109].) That makes the issue of construing rule 8.278(d)(1)(F) an issue of law for our de novo review. (Vidrio v. Hernandez (2009) 172 Cal.App.4th 1443, 1452 [92 Cal.Rptr.3d 178]; In re R.D. (2008) 163 Cal.App.4th 679, 684 [77 Cal.Rptr.3d 793].) Were the issue solely one of abstract logic, we might agree with plaintiffs. But it is not a blank slate we examine, and rule 8.278(d)(1)(F) cannot be examined in splendid isolation. This rule comes to us with a quite history.
(2) It was at the end of the 19th century that our Supreme Court first enunciated the principle that "The right to recover costs is purely statutory, and, in the absence of a statute, no costs could be recovered by either party." (Fox v. Hale & Norcross S. M. Co. (1898) 122 Cal. 219, 223 [54 P. 731].) Premiums for undertakings frequently fell victim to excision for lack of express statutory authorization. (Moss v. Underwriters' Report, Inc. (1938) 12 Cal.2d 266, 274-275 [83 P.2d 503]; Williams v. Atchison etc. Ry. Co. (1909) 156 Cal. 140, 141 [103 P. 885]; Christenson v. Cudahy Packing Co. (1927) 84 Cal.App. 237, 238-239 [257 P. 906].)
What is now rule 8.278 was originally rule 26 of the rules on appeal (former rule 26) drafted by Bernard Witkin in 1943. The principle of strict construction was retained, and early versions of former rule 26 made no mention of bond premiums. (See Witkin, New California Rules on Appeal (1944) 17 So.Cal.L.Rev. 232, 258-259; former rule 26, 36 Cal.2d 1, 22-23 [text of former rule 26 as amended in 1951]; Hogan v. Ingold (1952) 38 Cal.2d 802, 814 [243 P.2d 1] [principle of strict construction applied]; Lane v. Pacific Greyhound Lines (1947) 30 Cal.2d 914, 918 [187 P.2d 9] [same].)
It was not until the enactment in 1951 of former section 1035 (Stats. 1951, ch. 1327, § 1, p. 3217) that recovery of bond premiums had the requisite *443 authorization. (See Stockton Theatres, Inc. v. Palermo (1956) 47 Cal.2d 469, 476-477 [304 P.2d 7]; Crag Lumber Co., Inc. v. Crofoot (1958) 156 Cal.App.2d 568, 570 [319 P.2d 668].) It was not until 1959 that former rule 26(c) was amended to allow recovery of "the premium on any surety bond procured by the party recovering costs." (Former rule 26(c), 50 Cal.2d 1, 24-25.) In 1982, the substance of former section 1035 was reenacted in what is now section 995.250. (Stats. 1982, ch. 998, § 1, pp. 3659, 3662.) In the meantime, the principle of strict construction was still being applied. (E.g., Ladas v. California State Auto. Assn. (1993) 19 Cal.App.4th 761, 774 [23 Cal.Rptr.2d 810]; Perko's Enterprises, Inc. v. RRNS Enterprises (1992) 4 Cal.App.4th 238, 241 [5 Cal.Rptr.2d 470]; Parker v. City of Los Angeles (1974) 44 Cal.App.3d 556, 566 [118 Cal.Rptr. 687]; Combs v. Haddock (1962) 209 Cal.App.2d 627, 633-634 [26 Cal.Rptr. 252].)
In two instances, the Court of Appeal allowed a party prevailing on appeal to recover the premiums paid for undertakings, but denied recovery of "charges" or "fees" on letters of credit. (See Geldermann, Inc. v. Bruner (1992) 10 Cal.App.4th 640, 642 [12 Cal.Rptr.2d 654] (Geldermann) [appellant sought recovery of $28,676 in "charges" for a letter of credit in addition to the bond premium of $26,340]; Golf West of Kentucky, Inc. v. Life Investors, Inc. (1986) 178 Cal.App.3d 313, 315-316 [223 Cal.Rptr. 539] (Golf West) [appellant sought "$57,102 premium paid on the appeal bond and $210,015.48 fees paid to two banks for letters of credit to secure said bond"].) In one of those opinions, Division Five of this district applied the rule of strict construction but acknowledged that it might not reflect modern commercial reality: "The intent behind rule 26(c) is clear. Only the costs enumerated in the rule are recoverable, and the list of costs is to be strictly construed. A charge incurred for a letter of credit to secure an appeal bond is not a listed cost, and under the rule of strict construction the charge cannot be considered a `premium' on the bond. The charge is therefore unrecoverable. [¶] . . . [A]ppellate costs are not made recoverable by the mere fact they are reasonable; they are recoverable only as authorized by statute or rule of court. [Citation.] Commercial realities might convince the Judicial Council to amend rule 26(c) to permit recovery of charges for letters of credit, but that has not yet happened. Absent such authorization, we may not rely on practical considerations to permit recovery of a charge that is not among the `only' costs recoverable under rule 26(c)." (Geldermann, supra, at pp. 642-643.)
Following Geldermann, former rule 26 was further amended to allow recovery of the premium and "`other expense reasonably necessary to procure the surety bond, such as the expense of acquiring a letter of credit required as collateral for the bond.'" (See Cooper, supra, 81 Cal.App.4th 1294, 1298, 1300, quoting former rule 26(c)(6).) Thus, it appears that the *444 scope of recoverable costs had expanded to reach, first, the premiums for bonds and then letters of credit, then the "other expense reasonably necessary to procure the surety bond, such as the expense of acquiring a letter of credit." This is how matters stood when Cooper was decided in 2000.
The reason for Cooper's allure to Falk is obvious. Appellant Cooper was required to post an undertaking of $2.5 million. As the Court of Appeal summarized: "In order to finance the undertaking, Cooper obtained a $3 million loan and deposited $2.5 million of the loan proceeds with the clerk of the court. Cooper used the remaining loan proceeds to pay interest [totaling $200,000] on the loan." (Cooper, supra, 81 Cal.App.4th 1294, 1297.) The court held that the trial court had erred in not allowing "over $200,000 in expenses he had incurred in making his deposit." (Ibid.) Its reasoning was as follows:
"Rule 26(c)(6) requires that reasonable expenses necessary to acquire a bond are to be awarded to the prevailing party. Code of Civil Procedure section 995.730 explicitly requires that a deposit given in place of a bond must be treated in the same manner as a bond. Thus, contrary to the trial court's ruling, the reasonable expense incurred in making a deposit must be awarded a prevailing party such as Cooper.
"[¶]. . . [¶] In 1982, the Legislature enacted a specific provision governing deposits in lieu of bonds, section 995.730. Section 995.730 provides: `A deposit given instead of a bond has the same force and effect, is treated the same, and is subject to the same conditions, liability, and statutory provisions, including provisions for increase and decrease of amount, as the bond.' [Citation.]
"[¶] . . . [¶] In order to read rule 26(c) consistent with section 995.730, the reasonable or necessary costs associated with procuring a deposit in lieu of a bond must be awarded to a prevailing party. . . ."
"[¶] . . . [¶] Westbrook argues that the amendment to the rule is a strict one directed solely at the situations present in Geldermann and Golf West; that is, costs associated with obtaining a surety bond. However, as Cooper points out, under section 995.730 we are required to treat a bond and a deposit in lieu of a bond as equivalents. Because under rule 26(c)(6) the cost of obtaining a bond is recoverable, the cost of making a cash deposit is also recoverable. Thus, contrary to the trial court's finding, Cooper was entitled to recover the reasonable and necessary expenses he incurred in making the cash deposit." (Cooper, supra, 81 Cal.App.4th 1294, 1298-1300, fns. and italics omitted.)
*445 We agree with the trial court that Cooper is not controlling. At issue here is a letter of credit, not a cash deposit, so section 995.730 is inappositeas the trial court rightly noted. Moreover, there are a number of reasons not to extend Cooper to letters of creditindeed, to even question its holding.
The most obvious faultline in Cooper is its premisederived from section 995.730of treating deposits and bonds as equivalents demanding identical treatment. This premise does not withstand scrutiny.
(3) No statuteand by extension, no ruleis read in isolation, but is to be considered with reference to the entire scheme of which it is a part.[5] (Smith v. Superior Court (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218]; In re Marriage of Harris (2004) 34 Cal.4th 210, 222 [17 Cal.Rptr.3d 842, 96 P.3d 141]; cf. In re Derrick S. (2007) 156 Cal.App.4th 436, 449 [67 Cal.Rptr.3d 367] [construction of a rule of court "cannot be divorced from the statutes it is designed to effectuate"].) This principle was not employed in Cooper, which considered what was then rule 26(c)(6) only in conjunction with section 995.730. But there are other relevant provisions in the Bond and Undertaking Law (§ 995.010 et seq.) that did not factor in Cooper's analysis. There is no mention of the most pertinent provision of the Bond and Undertaking Law, section 995.250, the one governing costs, which limits recovery of costs for a bond to the premium paid for itwith no mention of any collateral or ancillary expenses incurred in obtaining the bond.[6]
Cooper is further undermined by its unstated assumption that interest paid on an appellate bond is recoverable, from which assumption the court concludes that interest paid on a deposit used in lieu of a bond is, by force of section 995.730, likewise recoverable. To satisfy the principle of strict construction, it would be necessary to establish statutory authority for recovery of interest on a bond, yet no such statute is cited in Cooper. Moreover, it appears that interest on a deposit is statutorily recoverable only to the extent there are "no proceedings . . . pending to enforce the liability of the principal on the deposit . . . ." (§ 995.740.)
*446 Sections 995.250 and 995.730 were enacted together as part of the Bond and Undertaking Law (§§ 995.010-996.560), a consolidation of existing statutes recommended by the Law Revision Commission. (Stats. 1982, ch. 998, § 1, pp. 3659, 3662, 3669.) The Commission explained that its proposal was overwhelmingly procedural and nonsubstantive: "The Law Revision Commission recommends that the procedural bond and undertaking provisions be compiled into one statute and that the duplicative provisions be repealed or deleted from the codes. [¶] Consolidation of the numerous similar statutes to create one uniform statute necessarily involves many changes in wording, a few variations from existing procedures, and an occasional minor substantive change. The changes made in existing law by the proposed statute are noted in the Comments that follow each amended or repealed provision of existing law in the draft of conforming changes attached to this recommendation." (16 Cal. Law Revision Com. Rep. (1982) p. 508, fn. omitted.)
The comment for the proposed section 995.730 states simply that it "is drawn from portions of former Probate Code Sections 541.3 (executor or administrator) and 2331 (guardian or conservator)."[7] (16 Cal. Law Revision Com. Rep., supra, p. 532, reprinted as Leg. Com. com. in 18 West's Ann. Code Civ. Proc. (2009 ed.) foll. § 995.730, p. 277.) There is no mention of any substantive change, certainly nothing to indicate a shift of the magnitude discerned in Cooper. To the contrary, the very modesty of the Law Revision Commission's proclaimed intentions strongly militates against the Cooper court's conclusion.
This point is reinforced by examination of a decision from this court: Sequoia Vacuum Systems v. Stransky (1964) 229 Cal.App.2d 281 [40 Cal.Rptr. *447 203] (Stransky). Stransky involved a suit by a corporation (and others) against a former officer for unfair competition and breach of fiduciary duty. Prior to trial, the plaintiffs obtained a preliminary injunction. On appeal, the officer argued that the trial court erred in allowing as a cost "the interest paid by the respondents . . . on cash which they borrowed and deposited as an undertaking on the issuance of the preliminary injunction." (Id. at p. 289.) We agreed: "In 1951, Code of Civil Procedure section 1035 was enacted, providing that a premium on a surety bond is a proper item of costs unless the court finds the bond unnecessary to the proceeding. Respondents argue that since Code of Civil Procedure section 1054a permits a cash deposit in lieu of a surety bond, interest is allowable. However, the courts have strictly construed the statutes permitting costs and only those items specifically enumerated are recoverable [citation]. The necessity to set limits is obvious and dictates a close adherence to the clearly expressed legislative intent [citations]. For example, the extension here urged would logically permit a party who was not required to borrow but could deposit his own money, to claim as costs the interest which he might otherwise be acquiring through investment elsewhere. The claim must be denied." (Ibid.)
Both of the statutes mentioned in our discussion were repealed with the enactment in 1982 of the Bond and Undertaking Law. (Stats. 1982, ch. 517, §§ 165 [former § 1035], 170 [former § 1054a], pp. 2359, 2361.) There is no suggestion that a substantive change was intended. (See Cal. Law Revision Com. coms., 18A West's Ann. Code Civ. Proc. (2009 ed.) foll. former § 1035, p. 290 ["The substance of former Section 1035 is continued in Section 995.250 (cost of bond recoverable)."]; id., foll. former § 1054a, p. 361 ["The substance of former Section 1054a is continued in Sections 995.160 (`officer' defined), 995.710 (deposit in lieu of undertaking), and 995.720 (valuation of bearer bonds or notes)."].) Again, there is nothing here to suggest either the sea change found in Cooper, or an intent to diverge from our holding in Stransky.[8]
(4) Cooper is also dubious in light of a factor not explicitly addressed in the opinion. As already shown, section 1033.5 mentions only premiums on surety bonds, with no mention of letters of credit or interest. It would follow that these items would be covered by that statute's subdivision (c)(4): "Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." The trial court in Cooper ruled that "rule 26(c) does not permit a party to recover the expenses associated with making a cash deposit in lieu of a surety bond. In the alternative the trial court stated that even if it had discretion to award [interest] to Cooper, `I *448 would not in my discretion award Mr. Cooper the costs.'" (Cooper, supra, 81 Cal.App.4th 1294, 1298.) There is no mention in Cooper of section 1033.5, or the trial court's alternative holding. Indeed, the disposition in Cooper implies that the Court of Appeal decided as a matter of law that interest was recoverable, and that the trial court had no discretion to conclude otherwise.[9]
The arguments against extending Cooper to the situation before us are weighty. First, there is the principle of strictly construing any entitlement to costs, a principle that is still being applied after Cooper. (E.g., Gorman v. Tassajara Development Corp. (2009) 178 Cal.App.4th 44, 71 [100 Cal.Rptr.3d 152]; Sanders v. Lawson (2008) 164 Cal.App.4th 434, 439 [78 Cal.Rptr.3d 851]; Benson v. Kwikset Corp. (2007) 152 Cal.App.4th 1254, 1279 [62 Cal.Rptr.3d 284]; Duale v. Mercedes-Benz USA, LLC (2007) 148 Cal.App.4th 718, 724 [56 Cal.Rptr.3d 19]; Wagner Farms, Inc. v. Modesto Irrigation Dist. (2006) 145 Cal.App.4th 765, 774 [52 Cal.Rptr.3d 683].) Here, there is no express statutory authorization for such a dramatic change.
Second, we are not persuaded that our premise in Stransky, supra, 229 Cal.App.2d 281, 289"[t]he necessity to set limits"is no longer valid. If interest is recoverable on the cost of a letter of credit, it would appear to be no less proper for any other item of costs enumerated in section 1033.5 and rule 8.278 if the appellant had paid for them with borrowed money. For example, if an appellant had to draw on a line of credit to pay the bond premium. Or even used an ordinary credit card. As plaintiffs point out in their brief, the approach to "the cost to obtain a letter of credit" urged by Falk may be impossible to contain: "If this expansive definition of costs applied, then an appellant whose employee obtained a letter of credit to secure a surety bond would be able to obtain the costs of that employee's time and labor to do so," plus "overhead . . . and similar intangible and indirect expenses that would be difficult to calculate." It is hard to argue with the plaintiffs' conclusion that this approach "opens a can of worms."
(5) Third, there is something like a presumption of proportionality. As evidenced by the figures shown by this case, interest charges can be substantial. Were there not a contractual provision for attorney fees, the interest charges would be far and away the largest amount claimed by Falk. *449 In situations where there is no such provision, such charges could dwarf any other item of costs. The court in Golf West noted that allowing interest "would substantially expand the range of recoverable costs, particularly under these facts, where the ratio of the fees for the letters of credit to the appeal bond premium is nearly 4 to 1." (Golf West, supra, 178 Cal.App.3d 313, 317; accord, Sanders v. Lawson, supra, 164 Cal.App.4th 434, 440.) Here, the ratio of interest to bond premium is also nearly four to one ($101,073,81 to $28,650). And the interest is more than 68 percent of the total costs of $147,814.11 claimed by Falk. As we recently noted, courts do not lightly presume that substantial changes occur by "misdirection," "vague terms or ancillary provisions," or in a "cryptic" manner. (State Building & Construction Trades Council of California v. Duncan (2008) 162 Cal.App.4th 289, 323 [76 Cal.Rptr.3d 507].)
(6) All of the foregoing persuades us that Cooper's reasoning should not be extended to letters of credit, particularly as it may be read to authorize the recovery of interest on money borrowed to fund a letter of credit. De novo review does not clearly demonstrate that adoption of rule 8.278(d)(1)(F) was intended to permit a radical change of the recoverable costs of a successful appeal. Cooper stands as a conspicuous exception to the principles that costs are awarded only if statutorily authorized, and that such statutes are strictly construed. In light of the foregoing, we hold that the trial court did not err in striking the claimed interest charges.
(7) Falk's final contention is that, if Cooper allows recovery of interest to appellant-depositors of cash, but appellants who fund a letter of credit do not get comparable treatment, then the latter are denied the equal protection guaranteed by federal and state constitutions. However, this argument was not raised in the trial court, which ordinarily bars it from being considered on appeal. (E.g., People v. Burgener (2003) 29 Cal.4th 833, 860-861, fn. 3 [129 Cal.Rptr.2d 747, 62 P.3d 1]; Hershey v. Reclamation District No. 108 (1927) 200 Cal. 550, 565 [254 P. 542]; Fourth La Costa Condominium Owners Assn. v. Seith (2008) 159 Cal.App.4th 563, 585 [71 Cal.Rptr.3d 299].) Although we have the discretion to relax the rule in order to consider a pure issue of law, particularly if it implicates an important issue of public policy, or if it is not dependent on the production of additional evidence (e.g., Adams v. Murakami (1991) 54 Cal.3d 105, 115, fn. 5 [284 Cal.Rptr. 318, 813 P.2d 1348]; Hale v. Morgan (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 415, pp. 473-474), we decline to do so. The issue of costs seems particularly one where specific dollars-and-cents comparisons would be most pertinent.

*450 DISPOSITION
The order is affirmed.
Kline, P.J., and Haerle, J., concurred.
NOTES
[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated. Citation to a "rule" is to the indicated provision of the California Rules of Court.
[2] The amount cited was intended to be a net figure. Ms. Sutton explained that from the amount of interest paid, she subtracted "the interest payments received on the deposited funds," which totaled $55,588.57.
[3] Ms. Sutton explained this item as follows: "The additional charge included on the Amended Memorandum of Costs was for a fee charged by Wells Fargo to extend [Falk's] commercial line of credit by an additional month because the funds collateralizing the Letter of Credit had been drawn down by the Bank, pending an order discharging the surety bond. The withdrawal of funds had been triggered by Wells Fargo's decision not to renew the Letter of Credit. Wells Fargo charged [Falk] $1,784 for this service."
[4] Much of the argument at this hearing concerned plaintiffs' renewed motion for attorney fees. Shortly before Falk perfected this appeal from the order granting plaintiffs' motion to strike the interest claims, the trial court made an order awarding plaintiffs trial costs and attorney fees of $238,844. Neither side appealed from this order. This second attorney fee order, and the order which is the subject of this appeal, were not made by the same judge who made the fee order that was reversed on the prior appeal.
[5] For the same reason, we cannot accept the effort of Falk to fix the meaning of rule 8.278(d)(1)(F) through Black's Law Dictionary. "`[T]o seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results. Rather, it is to discern the sense of the statute, and therefore its words, in the legal and broader culture. Obviously, a statute has no meaning apart from its words. Similarly, its words have no meaning apart from the world in which they are spoken.' [Citation.]" (Hodges v. Superior Court (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].)
[6] Section 995.250 provides: "If a statute allows costs to a party in an action or proceeding, the costs shall include all of the following: [¶] (a) The premium on a bond reasonably paid by the party pursuant to a statute that provides for the bond in the action or proceeding. [¶] (b) The premium on a bond reasonably paid by the party in connection with the action or proceeding, unless the court determines that the bond was unnecessary."
[7] Former section 541.3 of the Probate Code provided: "Every person to whom letters testamentary or of administration are issued may, instead of executing a surety bond, as otherwise required by this chapter, file with the clerk of the court a cash bond, or an assigned interest in an account or accounts in a bank or an insured savings and loan association, or by the posting of bearer or endorsed bonds of the United States or of the State of California, in the amount required in the case of a surety bond when the surety is an authorized surety company, subject to increase or decrease as provided with respect to surety bonds, conditioned the same as required of such surety bonds, and returnable to the executor or administrator on his discharge." (Stats. 1963, ch. 423, § 1, pp. 1239-1240.)

Former section 2331 of the Probate Code provided: "(a) A guardian or conservator may, instead of furnishing the required surety bond, file with the clerk of the court a cash bond, or an assigned interest in an account in a bank in this state or in an insured savings and loan association, or deposit with the clerk bearer or endorsed bonds of the United States or of the State of California, in the sum required in the case of a surety bond given by an authorized surety company. [¶] (b) The security furnished under subdivision (a) is subject to increase or decrease as provided with respect to the surety bond, shall be conditioned the same as required of the surety bond, and is returnable to the guardian or conservator on the termination of the service of the guardian or conservator or on later substitution of a surety bond or other adequate security." (Stats. 1979, ch. 726, § 3, pp. 2334, 2375-2376.)
[8] Stransky was dismissed in Cooper as "no longer controlling" "in light of later statutory and rule changes." (Cooper, supra, 81 Cal.App.4th 1294, 1299.)
[9] The Court of Appeal's "conclusion" was as follows: "Because there was no basis in the record upon which the trial court could properly deny Cooper's request for the interest costs he incurred in making the deposit needed to stay foreclosure pending his prior appeal, the trial court's order must be reversed. On remand the trial court is directed to award Cooper such interest expenses as it finds were reasonable and necessary." (Cooper, supra, 81 Cal.App.4th 1294, 1300.)